VANCE v. W. A. VANDERCOOK COMPANY (No. 1).

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF SOUTH CAROLINA.

No. 514. Argued March 9, 10, 1898. — Decided May 9, 1898.

It is settled by previous adjudications of this court:

(1) That the respective States have plenary power to regulate the sale of intoxicating liquors within their borders, and the scope and extent of such regulations depend solely on the judgment of the lawmaking power of the States, provided always, they do not transcend the limits of state authority by invading rights which are secured by the Constitution of the United States, and provided further, that the regulations as adopted do not operate a discrimination against the rights of residents or citizens of other States of the Union;

(2) That the right to send liquors from one State into another, and the act of sending the same, is interstate commerce, the regulation whereof has been committed by the Constitution of the United States to Congress, and, hence, that a state law which denies such a right, or substantially interferes with or hampers the same, is in conflict with the Constitution of the United States;

(3) That the power to ship merchandise from one State into another carries with it, as an incident, the right in the receiver of the goods to sell them in the original packages, any state regulation to the contrary notwithstanding; that is to say, that the goods

received by interstate commerce remain under the shelter of the interstate commerce clause of the Constitution, until by a sale in the original package they have been commingled with the general mass of property in the State; but, since the passage of the act of August 8, 1890, c. 728, 26 Stat. 313, which provides "that all fermented, distilled or other intoxicating liquors or liquids transported into any State or Territory, or remaining therein for use, consumption, sale or storage therein, shall upon arrival in such State or Territory be subject to the operation and effect of the laws of such State or Territory enacted in the exercise of its police powers, to the same extent and in the same manner as though such liquids or liquors had been produced in such State or Territory, and shall not be exempt therefrom by reason of being introduced therein in original packages or otherwise," while the receiver of intoxicating liquors in one State, sent from another State, has the constitutional right to receive them for his own use, without regard to the state laws to the contrary, he can no longer assert a right to sell them in the original packages in defiance of state law.

The South Carolina act of March 5, 1897, No. 340, amending the act of March 6, 1896, No. 61, is unconstitutional in so far as it compels the resident of the State who desires to order alcoholic liquors for his own use, to first communicate his purpose to a state chemist, and in so far as it deprives any non-resident of the right to ship by means of interstate commerce any liquor into South Carolina unless previous authority is obtained from the officers of the State of South Carolina, since as, on the face of these regulations, it is clear that they subject the constitutional right of the non-resident to ship into the State and of the resident in the State to receive for his own use, to conditions which are wholly incompatible with and repugnant to the existence of the right which the statute itself acknowledges.

THE bill below was filed by the appellee, a corporation created by the laws of California and a citizen of that State. It alleged, in substance, that the corporation was the owner of large vineyards in California, from which it produced well known qualities of pure wines and brandies and other liquors; that through its travelling agent, a citizen of the State of Virginia, it took orders from certain residents of the State of South Carolina residing in the city of Charleston, to deliver to each of them in Charleston certain original packages of wines and brandies, the products of the vineyards of the complainant; that in consequence of said orders seventy-three original packages for the customers aforesaid were shipped

in one car, by a contract for continuous interstate carriage from San Francisco to Charleston; that under a law of South Carolina, known as the dispensary law, certain officers of the State of South Carolina had seized the packages of liquor above described and prevented the delivery thereof, and openly avowed their intention to continue to levy upon any packages of liquor shipped into the State of South Carolina in violation of the law of the State. The bill moreover alleged another shipment of the same character and a like seizure. The bill then averred as follows:

"And your orator further shows that your orator intends in the course of its said business, as aforesaid, further and in addition to said shipments so ordered by its said customers in advance, as aforesaid, to ship also from San Francisco, California, to its agent in the State of South Carolina, and to store and warehouse in the State of South Carolina, and to sell in the State of South Carolina, in the original unbroken packages as imported, as aforesaid, to the residents and citizens of the State of South Carolina, its wines and other liquors, products of its vineyards, as aforesaid, for the lawful use and consumption of the said residents and citizens of the State of South Carolina in the due and lawful exercise of your orator's right of importation of such wines, etc., products of its vineyards, into the State of South Carolina in lawful intercourse, trade and commerce with the citizens and residents of the State of South Carolina, under the Constitution and laws of the United States, all of which shipments, as aforesaid, the defendants and other persons claiming to act as state constables and officials threaten to seize, take and carry away, detain, convert and sell, to the manifest wrong, damage and injury of your orator and its trade and business, as aforesaid.

"And your orator further shows that by and under the terms, principle, policy and operation of the said dispensary law of the State of South Carolina, as aforesaid, approved March 6, 1896, and amended March 5, 1897, all wines, beers, ales, alcoholic, spirituous and other intoxicating liquors are subjects of lawful manufacture, barter, sale, export and import in the State of South Carolina, and have been, are being,

and will continue to be lawfully used and consumed as a beverage by the citizens and residents of the State of South Carolina."

. Averring the avowed purpose of the state officers to continue to seize all liquors thereafter shipped by the complainant into the State to residents therein or for sale in original packages, the bill proceeded to charge that the state law upon which the officers relied was void, because repugnant to the Constitution of the United States. That to prevent the continuing wrong which would necessarily arise from the conduct of the state officers and to avoid a multiplicity of suits, a writ of injunction was necessary restraining the state officers from interfering with complainant in its shipment of its products to residents of the State on their orders, and also enjoining the state officers from interfering with the complainant in shipping its products from the State of California into the State of South Carolina to its agents there for the purpose of selling the same in original packages, the provisions of the South Carolina law to the contrary notwithstanding. This mere outline of the averments of the bill suffices to convey an understanding of the controversy which the record presents. A restraining order was granted as prayed for against the designated state officers, and after due pleadings and proceedings this restraining order was perpetuated, and a final decree was entered in favor of the complainant in accordance with the prayer of the bill.

*Mr. William A. Barber*, Attorney General of the State of South Carolina, for appellants.

*Mr. J. P. Kennedy Bryan* for appellee.

MR. JUSTICE WHITE delivered the opinion of the court.

In the two cases of *Scott v. Donald*, 165 U. S. 58, 107, the court was called upon to determine whether a law of the State of South Carolina, controlling the sale of intoxicating liquors within that State, was repugnant to the Constitution of the

United States.  In one of the cases it was held that the court
below had jur'sdiction to entertain a bill filed by the complain-
ants to enjoin the execution of the law, as to liquors by them
owned ; while in both cases it was decided that, in so far as
the law then in question forbade the sending from one State
into South Carolina of intoxicating liquors for the use of the
person to whom it was shipped, the statute was repugnant to
the third clause of section 8 of the first article of the Consti-
tution of the United States, commonly spoken of as the Inter-
state Commerce clause of the Constitution.  It was besides
decided that the law in question, which created state officers or
agents with authority to buy liquor to be sold in the State,
and which forbade the sale of any liquor except that so bought
and offered for sale by the state officers or agents, was also in
violation of the Constitution of the United States, because
amounting to an unjust discrimination against liquors, the
products of other States.   The conclusion reached on this latter
subject was predicated not on the general theory which the
statute put in practice, but on particular provisions of the law
by which the discrimination was brought about.   Whether
a State could, without violating the Constitution of the United
States, confer upon certain officers or agents the sole power to
buy all liquors which were to be sold in the State, allowing no
other liquor to be sold except that offered for sale by the des-
ignated officers or agents, was not decided.   On the contrary,
this question was reserved, for as the state law was found to
violate the Constitution because of express discriminatory pro-
visions which it contained, it became unnecessary to determine
whether a law of that general character would be inherently
repugnant to the Constitution of the United States.   Referring
to this last question, the court said (p. 101) :

" It was pressed on us in the argument that it is not compe-
tent for a State, in the exercise of its police power, to monopo-
lize the traffic in intoxicating liquors, and thus put itself in
competition with the citizens of other States.  This phase of
the subject is novel and interesting, but we do not think it nec-
essary for us now to consider it.   It is sufficient for the pres-
ent case to hold, as we do, that when a State recognizes the

manufacture, sale and use of intoxicating liquors as lawful it cannot discriminate against the bringing of such articles in and importing them from other States; that such legislation is void as a hindrance to interstate commerce and an unjust preference of the products of the enacting State as against similar products of other States."

The controversy which this record presents arises from a law of South Carolina, similar in its general scope to the one which was under review in *Scott* v. *Donald.* The statute before us, however, was enacted after the decision in *Scott* v. *Donald,* and changes in many important particulars the law which was passed on in that case. The statute, as changed, retains the general provisions conferring on the state officers or agents the exclusive right to buy all liquor which is to be sold in the State and to sell the same, but does not contain those clauses in the previous statute which were held to operate a discrimination. It, moreover, modifies the previous statute to the extent that it allows shipments of intoxicating liquors to be made from other States into the State of South Carolina to residents therein for their own use, but subjects the exercise of this right to designated regulations and restrictions. Despite these differences, it is asserted that the present law is repugnant to the Constitution of the United States for the following reasons: *First,* because although the features in the prior act which were held to be discriminatory have been eliminated from this act, nevertheless there are, it is asserted, other provisions in the present act which on their face amount to a discrimination, and therefore render the act void. *Second,* because as the act as at present drawn created state officers and confers upon them the power to buy all the liquor which is to be sold in the State, and forbids the sale of any other liquor by any other person, it is therefore in violation of the Constitution of the United States to the extent that it seeks to control or forbid the sale in original packages of all liquor shipped into South Carolina from other States. And this controversy presents for consideration the question which was reserved in *Scott* v. *Donald.* *Third,* because, although the amended statute recognizes the right of residents

of other States to ship intoxicating liquors to the residents of South Carolina and their right to receive the same, for their own use, it, in reality, it is asserted, denies such right, since its exercise is subjected to conditions which hamper and frustrate the same to such a degree that they are equivalent to a denial of the right itself. The two first contentions go to the whole statute, and therefore, if well taken, render it void as an entirety. The third is narrower in its purport, since it only assails as unconstitutional the particular restrictions which the statute imposes upon the right of the residents of another State to ship into South Carolina and of the residents of that State to receive liquor for their own use. We, therefore, at the outset, dispose of the two first contentions before approaching the third.

In the inception it is necessary to bear in mind a few elementary propositions, which are so entirely concluded by the previous adjudications of this court, that they need only be briefly recapitulated.

(a.) Beyond dispute the respective States have plenary power to regulate the sale of intoxicating liquors within their borders, and the scope and extent of such regulations depend solely on the judgment of the lawmaking power of the States, provided always, they do not transcend the limits of state authority by invading rights which are secured by the Constitution of the United States, and provided further, that the regulations as adopted do not operate a discrimination against the rights of residents or citizens of other States of the Union.

(b.) Equally well established is the proposition that the right to send liquors from one State into another, and the act of sending the same, is Interstate Commerce, the regulation whereof has been committed by the Constitution of the United States to Congress, and, hence, that a state law which denies such a right, or substantially interferes with or hampers the same, is in conflict with the Constitution of the United States.

(c.) It is also certain that the settled doctrine is that the power to ship merchandise from one State into another car-

ries with it, as an incident, the right in the receiver of the goods to sell them in the original packages, any state regulation to the contrary notwithstanding; that is to say, that the goods received by Interstate Commerce remain under the shelter of the Interstate Commerce clause of the Constitution, until by a sale in the original package they have been commingled with the general mass of property in the State.

This last proposition, however, whilst generically true, is no longer applicable to intoxicating liquors, since Congress in the exercise of its lawful authority has recognized the power of the several States to control the incidental right of sale in the original packages, of intoxicating liquors, shipped into one State from another, so as to enable the States to prevent the exercise by the receiver of the accessory right of selling intoxicating liquors in original packages except in conformity to lawful state regulations. In other words, by virtue of the act of Congress the receiver of intoxicating liquors in one State, sent from another, can no longer assert a right to sell in defiance of the state law in the original packages, because Congress has recognized to the contrary. The act of Congress referred to, c. 728, was approved August 8, 1890, and is entitled " An act to limit the effect of the regulations of commerce between the several States and with foreign countries in certain cases." It reads as follows:

" That all fermented, distilled or other intoxicating liquors or liquids transported into any State or Territory, or remaining therein for use, consumption, sale or storage therein, shall upon arrival in such State or Territory be subject to the operation and effect of the laws of such State or Territory enacted in the exercise of its police powers, to the same extent and in the same manner as though such liquids or liquors had been produced in such State or Territory, and shall not be exempt therefrom, by reason of being introduced therein in original packages or otherwise." 26 Stat. 313.

The scope and effect of this act of Congress have been settled. _In re Rahrer_, 140 U. S. 545; _Rhodes_ v. _Iowa_, ante, 412.

In the first of these cases the constitutional power of Congress to pass the enactment in question was upheld, and the

purpose of Congress in adopting it was declared to have been to allow state laws to operate on liquor shipped into one State from another, so as to prevent the sale in the original package in violation of state laws. In the second case the same view was taken of the statute, and although it was decided that the power of the State did not attach to the intoxicating liquor when in course of transit and until receipt and delivery, it was yet reiterated that the obvious and plain meaning of the act of Congress was to allow the state laws to attach to intoxicating liquors received by Interstate Commerce shipments before sale in the original package, and therefore at such a time as to prevent such sale if made unlawful by the state law.

The claim that the state statute is unconstitutional because it deprives of the right to sell imported liquor in the original packages rests, therefore, on the assumption that the state law is a regulation of Interstate Commerce, because it forbids the doing of an act which in consequence of the permissive grant resulting from the act of Congress, the State had undoubtedly the lawful power to do. Indeed, the entire argument by which it is endeavored to maintain the contention arises from excluding from view the change as to the sale of intoxicating liquor arising from the act of Congress; that is, it rests on the fallacious assumption that the State is without power to forbid the sale of intoxicating liquors in original packages despite the act of Congress, while in fact, as a result of that act, the restrictions and regulations of state laws become operative on the original package before the sale thereof, and therefore such packages cannot be sold if the state law forbids the sale, or can be only so sold in the manner and form prescribed by the state regulations. In view of the self-evident misconception upon which the argument proceeds, it becomes unnecessary to review the many decisions of this court cited in support of the proposition relied upon. Their authority is unquestioned, but their irrelevancy is equally obvious. They all relate to and illustrate various aspects of the principle that the right to send merchandise from one State to another carries with it as an incident the power of

the one by whom they are received to sell them in the original package, even although so doing may be contrary to a state law. None of them have the remotest bearing on the exception to this general rule springing from the act of Congress. The right of the State to forbid the sale of liquors in the original packages being clear, it results that a state law cannot be void because in excess of state authority, when it is but the execution of a power lawfully vested in the legislature of the State. This reasoning would dispose of the case, but for the contention that the act of Congress in question has no bearing on the controversy, and indeed that in this case the power of the State to control the sale of intoxicants in an original package must be determined just as if the act of Congress had never been passed.

Congress, it is argued, by the act in question has submitted merchandise in original packages only to the control of state laws " enacted in the exercise of its police powers." As the state law here in question does not forbid, but, on the contrary, authorizes the sale of intoxicants within the State, hence it is not a police law, therefore not enacted in the exercise of the police power of the State, and consequently does not operate upon the sale of original packages within the State. But the premise upon which these arguments rest is purely arbitrary and imaginary. From the fact that the state law permits the sale of liquor subject to particular restrictions and only upon enumerated conditions, it does not follow that the law is not a manifestation of the police power of the State. The plain purpose of the act of Congress having been to allow state regulations to operate upon the sale of original packages of intoxicants coming from other States, it would destroy its obvious meaning to construe it as permitting the state laws to attach to and control the sale only in case the States absolutely forbade sales of liquor, and not to apply in case the States determined to restrict or regulate the same.

The confusion of thought which is involved in the proposition to which we have just referred is embodied in the principle upon which the court below mainly rested its conclusion. That is, " if all alcoholic liquors, by whomsoever held, are

declared contraband, they cease to belong to commerce, and are within the jurisdiction of the police power; but so long as their manufacture, purchase or sale, and their use as a beverage in any form or by any person are recognized, they belong to commerce and are without the domain of the police power." But this restricts the police power to the mere right to forbid, and denies any and all authority to regulate or restrict. The manifest purpose of the act of Congress was to subject original packages to the regulations and restraints imposed by the state law. If the purpose of the act had been to allow the state law to govern the sale of the original package only where the sales of all liquor were forbidden, this object could have found ready expression, whilst, on the contrary, the entire context of the act manifests the purpose of Congress to give to the respective States full legislative authority, both for the purpose of prohibition as well as for that of regulation and restriction with reference to the sale in original packages of intoxicating liquors brought in from other States.

Nor is the claim well founded that it was decided in *Scott* v. *Donald* that the provisions of the act of Congress of 1890 do not apply in any State by whose laws the sale of liquor is not absolutely forbidden, that is to say, that the right exists to sell original packages in violation of the state laws wherever they do not prohibit liquor from being sold under any circumstances. The language in *Scott* v. *Donald,* which it is asserted establishes this doctrine, is as follows (p. 100):

"It (the South Carolina law then considered) is not a law purporting to forbid the importation, manufacture, sale and use of intoxicating liquors, as articles detrimental to the welfare of the State and to the health of the inhabitants, and hence it is not within the scope and operation of the act of Congress of August, 1890.".

Separated from its context these words might have the significance sought to be attached to them, but when elucidated by a reference to what immediately preceded them, and that which immediately followed, it is obvious that they refer to the matter which was being considered, that is, a state law which did not forbid the sale, but, on the contrary, allowed it,

under conditions of express discrimination against the products of other States.   Immediately following the passage cited is this language:

"That law (the act of Congress) was not intended to confer upon any State the power to discriminate injuriously against the products of other States in articles whose manufacture and use are not forbidden, and which are therefore the subjects of legitimate commerce.   When that law provided that 'all fermented, distilled or intoxicating liquors transported into any State or Territory, remaining therein for use, consumption, sale or storage therein, should, upon arrival in such State or Territory, be subject to the operation and effect of the laws of such State or Territory enacted in the exercise of its police powers, to the same extent and in the same manner as though such liquids or liquors had been produced in such State or Territory, and should not be exempt therefrom by reason of being introduced therein in original packages or otherwise,' evidently equality or uniformity of treatment under state laws was intended.   The question whether a given state law is a lawful exercise of the police power is still open, and must remain open, to this court.   Such a law may forbid entirely the manufacture and sale of intoxicating liquors and be valid.   Or it may provide equal regulations for the inspection and sale of all domestic and imported liquors and be valid. But the State cannot, under the Congressional legislation referred to, establish a system which, in effect, discriminates between interstate and domestic commerce in commodities to make and use which are admitted to be lawful."

Having found that the law under consideration expressly discriminated against the products of other States, the question which arose for decision was whether the act of Congress allowed such a law to operate on the original package, and it became therefore not necessary to decide what would be the rule where discrimination did not exist.   The conclusion expressed on that branch of the case was this and nothing more, that although the act of Congress authorizes a state law to attach to an original package so as to prevent its sale, it did not contemplate and sanction the operation of a state law which

injuriously discriminated against the products of other States, and which in consequence of such discrimination was not a police law in the correct sense of those words. It would lead to an impossible conclusion to treat the sentences in *Scott* v. *Donald*, upon which reliance is placed as having the significance attributed to them in argument, since, as we have already stated, the court expressly reserved the question of whether a state law which undertook to confer on its officers power to buy all liquor which was to be sold in the State would be constitutional if no express discriminatory provisions were found in it. It is obvious from even a casual reading of the opinion that the court did not pass on the very question which it expressly declared it abstained from deciding.

A more plausible but equally unsound proposition is involved in the contention that the state law in question is inherently discriminatory. The argument by which this is supported is as follows: The law gives to the state officers exclusive right to purchase all the liquor to be sold in the State. The authority to purchase includes the right on the part of the buyer to determine from whom and where the purchase may be made. This gives the officers the opportunity, by exercising their right of purchase, to buy in one State to the detriment and exclusion of the products of every other State. As no other product, then, but that which the officers buy can be sold in the State, it follows that, although intoxicants will be freely offered for sale in the State, only liquors coming from the State in which the officer has purchased will be so sold, and the products of all other States will be excluded from sale and be thereby discriminated against. And whether these consequences will arise will depend solely upon the arbitrary discretion of the state officers in determining where and from whom the liquor that they propose to offer for sale will be by them purchased. This, it is argued, demonstrates the inherent discrimination arising from legislation which makes state officers the sole persons authorized to buy and sell liquor — a discrimination whose unjust consequences can only be avoided by recognizing the right of the residents of all other States to ship their products into the State and sell them in original

packages. In the first place, to maintain this proposition, the presumption must be indulged in that the state officer, in purchasing as provided by the state statute, instead of buying fairly and in the best markets, affording an equal chance to all sellers and to every locality, will, on the contrary, so act as to discriminate against the products of one or more States and in favor of those of others.

Such a presumption would be equally justified in case the state law authorized only residents to be licensed to sell liquor and restricted the number of such licenses. The persons so licensed, whether one or one hundred, would buy where they pleased the liquor they proposed to sell, and it would therefore be fully as cogent to argue that they might elect to buy in one place instead of another, and thus discriminate against the persons or places from where or from whom they did not buy. The argument will not be strengthened, even if it be conceded that there is a difference between licensing a number of persons to buy or sell and concentrating the power, to buy all the liquor to be sold, in the hands of state officers, and by further conceding that whether the statute discriminates against producers of other States is to be determined solely by the power to bring about the discrimination which might arise from its execution, and not by whether the power has been so carried out as to cause an actual discrimination. Under these concessions there would doubtless be force in the position taken, if the authority of the state officers to buy the liquor to be by them sold, excluded the right of the residents of every other State to ship to the residents of South Carolina liquor for their own use, for in that event the products of the State from which no liquor was bought by the state officers would be wholly excluded from the State, although by the state law liquor could be sold therein by the state agents. But the weight of the contention is overcome when it is considered that the Interstate Commerce clause of the Constitution guarantees the right to ship merchandise from one State into another, and protects it until the termination of the shipment by delivery at the place of consignment, and this right is wholly unaffected by the act of Congress which allows state

authority to attach to the original package before sale but only after delivery. *Scott* v. *Donald, supra; Rhodes* v. *Iowa, supra.* It follows that under the Constitution of the United States every resident of South Carolina. is free to receive for his own use liquor from other States and that the inhibitions of a state statute do not operate to prevent liquors from other States from being shipped into such State, on the order of a resident for his use. This demonstrates the unsoundness of the contention that if state agents are the only ones authorized to buy liquor for sale in a State, and they select the liquor to be sold from particular States, the products of other States will be excluded. They cannot be excluded if they are free to come in for the use of any resident of South Carolina who may elect to order them for his use. The products of other States will be, of course, excluded from sale in the original packages in the State, but as the right of the State to prevent the sale in original packages of intoxicants coming from other States, in consequence of the state law forbidding the sale of any but certain liquor, attaches to the original packages from other States by virtue of the act of Congress, the inability to make such sales arises from a lawful state enactment. To hold the law unconstitutional because it prevents such sale in the original package would be to decide that the state law was unconstitutional because it exerted a power which the State had a lawful right to exercise. Indeed, the law of the State here under review does not purport to forbid the shipment into the State from other States of intoxicating liquors for the use of a resident, and if it did so, it would, upon principle and under the ruling in *Scott* v. *Donald,* to that extent be in conflict with the Constitution of the United States. It is argued, that the foregoing considerations are inapplicable since the state law, now before us, whilst it recognizes the right of residents of other States to ship liquor into South Carolina for the use of residents therein, attaches to the exercise of that right such restrictions as virtually destroy it.

But the right of persons in one State to ship liquor into another State to a resident for his own use is derived from the Constitution of the United States, and does not rest on the

grant of the state law.    Either the conditions attached by the
state law unlawfully restrain the right or they do not.    If they
do — and we shall hereafter examine this contention — then
they are void.    If they do not, then there is no lawful ground
of complaint on the subject.

We are thus brought to examine whether the regulations
imposed by the state law on the right of the residents of other
States to ship into the State of South Carolina alcoholic liquor
to the residents of that State when ordered by them for their
use, are so onerous and burdensome in their nature as to sub-
stantially impair the right; that is, whether they so hamper
and restrict the exercise of the right as to materially interfere
with or, in effect, prevent its enjoyment.

Before, however, approaching this question, we briefly dis-
pose of two other contentions.    It is said that the law now
before us is expressly discriminatory, since it really contains the
provisions found in the previous statute, and which were held
in *Scott* v. *Donald*, to be repugnant to the Constitution of the
United States.    This argument is predicated on the following
proposition: The law now before us was passed subsequent to
the decision in *Scott* v. *Donald*, holding that the discrimina-
tory clauses in the previous act were void, and it entirely omits
them.    Its repealing clause, however, only repeals laws incon-
sistent therewith, and the argument is, that as the provisions
found in the previous law, and which were declared unconsti-
tutional by this court, are not inconsistent with the present
law, therefore they continue to exist, and the present law must
be interpreted as if they were written in it.    The error of the
argument is so self evident as to require only a passing notice.
The very fact that the omitted provisions had been before the
enactment of the new law declared to be unconstitutional
affords a conclusive demonstration of their inconsistency with
the present law.    In addition, the fact that the present law
has omitted the provisions which had been declared unconsti-
tutional excludes the supposition that it was the intention of
the new law, by silence on the subject, to perpetuate and re-
enact the void provisions.    It is, moreover, contended that
there is an express discrimination found in the present stat-

ute, which was not referred to in *Scott* v. *Donald*, the provision in question being one which authorizes the use by a resident of South Carolina of wine or liquor made by him for such purpose.   The context of the entire statute conclusively demonstrates that the right thus given in an exceptional and limited case in no way relieves alcoholic liquors made by a citizen of South Carolina for his own use from the restrictions imposed by the statute as to the sale of all other liquors, and this, therefore, leaves liquor made by a resident for his own use, under the control of the general regulations which the statute creates, and this completely answers the contention.

The right recognized by the State in residents of another State to ship into South Carolina to a resident of that State liquor for his own use is regulated by the statute as follows, act of March 5, 1897, No. 340, amending the act of March 6, 1896, No. 61 :

" Any person resident in this State intending to import for personal use and consumption any spirituous, malt, vinous, fermented, brewed or other liquor, containing alcohol, from any other State or foreign country; shall first certify to the chemist of the South Carolina College the quantity and kind of liquor proposed to be imported, together with the name and place of business of the person, firm or corporation from whom it is desired to purchase, accompanying such certificate with a statement that the proposed consignor has been requested to forward a sample of such liquor to the said chemist at Columbia, South Carolina.   Upon the receipt of said sample, the said chemist shall immediately proceed to test the same, and if it be found to be pure and free from any poisonous, hurtful or deleterious matter, he shall issue a certificate to that effect, stating therein the name of the proposed consignor and consignee, and the quantity and kind of liquor proposed to be imported thereunder, which certificate shall be dated and forwarded by the said chemist, postpaid, to the proposed consignor at his place of business.   The said consignor shall cause such certificate to be attached to the package containing the liquor when it is shipped into this State, and no package bearing such certificate shall be liable to seizure and confiscation ;

but any package of spirituous, malt, vinous, fermented, brewed or other liquid or liquor containing alcohol imported into this State without such certificate, or any package containing liquor other than that described in the certificate thereto attached, or any package shipped by or to any person or persons not named in such certificate, shall be seized and confiscated as provided in this act. Any certificate obtained from the chemist as herein provided shall be used within sixty days after the date of its issue, and shall be invalid thereafter. It shall be unlawful to use said certificates for more than one importation."

The regulation, then, compels the resident of the State who desires to order for his own use, to first communicate his purpose to a state chemist. It moreover deprives any non-resident of the right to ship by means of Interstate Commerce any liquor into South Carolina unless previous authority is obtained from the officers of the State of South Carolina. On the face of these regulations, it is clear that they subject the constitutional right of the non-resident to ship into the State and of the resident in the State to receive for his own use, to conditions which are wholly incompatible with and repugnant to the existence of the right which the statute itself acknowledges. The right of the citizen of another State to avail himself of Interstate Commerce cannot be held to be subject to the issuing of a certificate by an officer of the State of South Carolina, without admitting the power of that officer to control the exercise of the right. But the right arises from the Constitution of the United States; it exists wholly independent of the will of either the lawmaking or the executive power of the State; it takes its origin outside of the State of South Carolina, and finds its support in the Constitution of the United States. Whether or not it may be exercised depends solely upon the will of the person making the shipment, and cannot be in advance controlled or limited by the action of the State in any department of its government. As the law directs that a sample of the liquor proposed to be shipped shall be sent to the state officer in advance of the shipment, and as a prerequisite for obtaining permission to make a

subsequent shipment, it is claimed in argument that this law is an inspection law passed for the purpose of guaranteeing the purity of the product to be shipped into the State for the use of a resident therein, and therefore it is but a valid manifestation of the police power of the State exerted for the purposes of inspection only. But it is obvious that this argument is unsound, as the inspection of a sample sent in advance is not in the slightest degree an inspection of the goods subsequently shipped into the State. The sample may be one thing and the merchandise which thereafter comes in another. It is hence beyond reason to say that the law provides for an inspection of the goods shipped into the State from other States, when in fact it exacts no inspection whatever. Conceding, without deciding, the power of the State where it has placed the control of the sale of all liquor within the State in charge of its own officers to provide an inspection of liquors shipped into a State by residents of other States for use by residents within the State, it is clear that such a law to be valid must not substantially hamper or burden the constitutional right on the one hand to make and on the other to receive such shipment. A law of this nature must at least provide for some inspection of the article to justify its being an inspection law. The power of the State to inspect an article protected by the guarantees of the Constitution, because intended only for use and which cannot be sold, is in the nature of things restrained by limitations arising from the constitutional provisions of a more restricted nature than would be the power to inspect articles intended for sale within the State. The greater harm and abuse which might arise in the latter case suggests a wider power than is incident to the other.

It follows from the foregoing that the decree below rendered was well founded in so far as it restrained the defendants from seizing the property shipped into the State of South Carolina from the State of California by the complainant for the residents of the State of South Carolina on the orders of such residents for their own use, because said shipments had not been made in compliance with the regulations

of the law of South Carolina. But it further follows that the decree below was wrong in so far as it restrained the state officers from levying upon the property of the complainant shipped into the State to agents of complainant for the purpose of being stored and sold therein in original packages and from interfering with such sales. These conclusions require that the judgment below be affirmed in part and reversed in part.

*This renders it necessary to remand the case to the court below with instructions to enter a decree setting aside the injunction and dismissing the bill to the extent above indicated, and perpetuating the injunction only in so far as is above pointed out, the whole in accordance with the views herein above expressed. and it is so ordered.*

MR. JUSTICE SHIRAS dissenting in part, with whom the CHIEF JUSTICE and MR. JUSTICE McKENNA concurred.

In the opinion and judgment of the court, in so far as they affirm the decree of the Circuit Court restraining the state officers from seizing property shipped into the State of South Carolina from the State of California by the complainant for residents of South Carolina on their order for their own use, I fully concur. But the reasons which lead me to so concur constrain me to withhold my assent from that portion of said opinion and judgment which reverses the decree below, in respect that it restrained such officers from levying upon and confiscating property of the complainant shipped into the State to agents for the purpose of being stored and sold therein in original packages.

In the few observations I shall submit it will be assumed, as well settled, that before the passage of the act of August 8, 1890, known as the Wilson Act, it was not within the power of any State to forbid the importation of wines and liquors from foreign countries or other States, nor their sale in the original packages, nor to subject such sale to discriminatory taxes or regulations. *Walling* v. *Michigan*, 116 U. S. 446; *Bowman* v. *Chicago Railway Co.*, 125 U. S. 465, 507;

*Leisy* v. *Hardin*, 135 U. S. 100; *Lyng* v. *Michigan*, 135 U. S. 161.

The case before us, therefore, turns upon the proper construction and application of that statute.

Since its passage it has been considered by this court in two cases, and the conclusions therein reached will now be pointed out.

In the case of *In re Rahrer*, 140 U. S. 545, the question for adjudication was the validity of a constitutional provision of the State of Kansas, which provided that " the manufacture and sale of intoxicating liquors shall be forever prohibited in this State, except for medical, scientific and mechanical purposes," and of certain statutes of that State which declared that " any person or persons who shall manufacture, sell or barter any spirituous, malt, vinous, fermented or other intoxicating liquors shall be guilty of a misdemeanor, and be punished as hereinafter provided: Provided, however, That such liquors may be sold for medical, scientific and mechanical purposes as provided in this act; " and it was held that, in the case of a person arrested by the state authorities for selling imported liquor on the 9th day of August, 1890, contrary to the law of the State which forbade the sale, the act of Congress which had gone into effect on the 8th day of August, 1890, providing that imported liquors should be subject to the operation and effect of the state laws to the same extent and in the same manner as though the liquors had been produced in the State, justified the imposition of the penalties of the state law.

It will be perceived that this was a case in which the state laws wholly prohibited the manufacture and sale of intoxicating liquors as articles of ordinary consumption and merchandise; and this court said, referring to the Wilson bill, "Congress did not use terms of permission to the State to act, but simply removed an impediment to the enforcement of the state laws in respect to imported packages in their original condition. . . . It imparted no power to the State not then possessed, but allowed imported property to fall at once upon arrival within the local jurisdiction."

In *Scott* v. *Donald*, 165 U. S. 58, was presented the question of the validity of the act of the general assembly of South Carolina, approved January 2, 1895, generally known as the State Dispensary Law. That legislation did not forbid the use, manufacture or sale of intoxicating liquors, but enacted an elaborate system of regulation, whereby no wines or liquors, except domestic wines, should be manufactured or sold except through the agency of a state board of control, a commissioner and certain county dispensers, and after an inspection by a state chemist.

Packages of wines and liquors made in other States and imported by a resident of the State for his own use, and in the possession of railroad companies which, as common carriers, had brought the packages within the State, were seized and confiscated as contraband by constables of the State.

This court, after considering certain provisions of the act which relieved the sale of domestic wines from restrictions imposed upon imported wines and also those which created a system of inspection, said —

"This is not a law purporting to forbid the importation, manufacture, sale and use of intoxicating liquors, as articles detrimental to the welfare of the State and to the health of its inhabitants, and hence is not within the scope and operation of the act of Congress of August 8, 1890. That law was not intended to confer upon any State the power to discriminate injuriously against the products of other States in articles whose manufacture and use are not forbidden, and which are therefore the subjects of legitimate commerce. When that law provided that 'all fermented, distilled or intoxicating liquors, transported into any State or Territory, remaining therein for use, consumption, sale or storage therein, should, upon arrival in such State or Territory, be subject to the operation and effect of the laws of such State or Territory enacted in the exercise of its police powers, to the same extent and in the same manner as though such liquids or liquors had been produced in such State or Territory, and should not be exempt therefrom by reason of being introduced therein in original packages or otherwise,' evidently equality or uniform-

ity of treatment under state laws was intended. The question whether a given state law is a lawful exercise of the police power is still open, and must remain open, to this court. Such a law may forbid entirely the manufacture and sale of intoxicating liquors and be valid. Or it may provide equal regulations for the inspection and sale of all domestic and imported liquors and be valid. But the State cannot, under the Congressional legislation referred to, establish a system which, in effect, discriminates between interstate and domestic commerce in commodities to make and use which are admitted to be lawful. . . . . It is sufficient for the present case to hold, as we do, that when a State recognizes the manufacture, sale and use of intoxicating liquors as lawful, it cannot discriminate against the bringing of such articles in and importing them from other States; that such legislation is void as a hindrance to Interstate Commerce and an unjust preference of the products of the enacting State as against similar products of the other States."

Accordingly the conclusion reached was that, as respected residents of the State of South Carolina desiring to import foreign wines and liquors for their own use, the act in question in that case was void.

In the present case, which arose under a later statute, this court follows *Scott* v. *Donald* in holding that the act is invalid as sought to be applied to the importation by residents of the State for their own use, but holds that the residents of other States cannot import wines and liquors and sell them in the original packages, although such articles are recognized by the State as lawful subjects of manufacture, use and sale.

The court concedes that it is not within the power of the State, even when reinforced by the act of Congress of August, 1890, to deprive a resident of one State of the right to ship liquor into another State to a resident for his own use, " because such right is derived from the Constitution of the United States, and does not rest on the grant of the state law," yet holds that the act of South Carolina can validly declare that all liquors imported from other States, for the purpose of sale in original packages, can be seized and confiscated, the com-

mon carrier thereof subjected to fine, and the consignee, if he removes the liquors from the depot or pays freight or express charges thereon, subjected to a fine of five hundred dollars, and to an imprisonment of twelve months at hard labor in the state penitentiary.

Such legislation manifestly forbids Interstate Commerce in articles whose manufacture and sale within the State are permitted, and, in view of the previous decisions of this court, can only be defended by invoking the provisions of the act of Congress.   This seems to be the theory upon which the opinion of the majority proceeds, as shown by the following statement: " The claim that the state statute is unconstitutional because it deprives of the right to sell imported liquors in the original packages, rests on the assumption that the state law is a regulation of Interstate Commerce, because it forbids the doing of an act which, in consequence of the permissive grant resulting from the act of Congress, the State had undoubtedly the lawful power to do.   Indeed, the entire argument by which it is endeavored to maintain the contention arises from excluding from view the change as to the sale of intoxicating liquors arising from the act of Congress."

But, if the act of Congress can validly operate to authorize the State to forbid the sale in original packages of imported articles of the same kind with those whose manufacture and sale within the State are permitted and regulated, I am unable to see why it cannot also operate to authorize the State to forbid the importation for use.   Once concede that it is competent for Congress to abdicate its control over Interstate Commerce in articles whose manufacture, sale and use are lawful within the State, and to confer upon the State the power to forbid importation of such articles for *sale*, it must follow that it would equally be competent for Congress to authorize the State to forbid the importation of such articles for *use*.   And, conversely, if it be not competent for Congress to authorize a State to forbid the importation for use of articles whose use in domestic commerce is lawful, so it would not be competent for Congress to authorize a State to forbid the importation for sale of articles whose sale in domestic commerce is lawful.

I am altogether unwilling to attribute to Congress an intention to abandon the protection of Interstate Commerce in articles of food or drink, whether for personal use or for sale, where similar articles are treated by a State as lawful subjects of domestic commerce. If such were the intention of Congress in the act of August, 1890, I should be compelled to regard such legislation as invalid. The control and regulation of foreign and interstate commerce are among the most important powers possessed by the National legislature, and, as has often been said by this court, were among the most potent causes which led to the establishment of the Constitution. The conceded purpose of protecting commerce from hostile action between the States would be defeated if Congress could withdraw from the exercise of its powers in such matters, and turn them over to the legislatures of the States.

But there is no reason to suppose that Congress intended any such act of abdication in the present instance. Reasonable meaning and effect can be given to the act of August 8, 1890, without giving it such a construction as would raise the serious question of its constitutionality.

Its plain meaning is that, if, in the *bona fide* exercise of its police power, the State finds it necessary to declare that all fermented, distilled or other intoxicating liquor is of a detrimental character, and that its use and consumption are against the morals, good health and safety of its inhabitants, it may legislate, on that assumption, with equal effect as to such liquor whether imported or of domestic manufacture. Such legislation may take the form of total prohibition, and be valid, as we held in *In re Rahrer*, 140 U. S. 545, under a statute of the State of Kansas. The articles prohibited were thus taken out of the sphere of commerce, whether interstate or domestic, and no discriminations were thereby made or attempted adversely to the persons or property of other States.

Or the legislation may seek to regulate the sale of intoxicating liquors, and if the regulations are reasonable, in the fair exercise of the police power, applicable alike to articles imported and to those made in the State, their validity may well be sustained, without infringing upon the Federal control of Interstate Commerce.

Thus if the State of South Carolina, instead of prohibiting the sale of imported liquors in imported packages altogether and confiscating them to her own use, had seen fit to prescribe reasonable regulations of the sale — such, for instance, as forbade its taking place on Sunday, or in the night time, or to be drunk on the premises, or to be made to minors, and if such regulations likewise applied to the sale of domestic liquors — then the case might be deemed to fall within the proper exercise of the police power.

Far different is the nature of the provisions of these acts of South Carolina. They do not pretend to forbid either the use, manufacture or sale of intoxicating liquors. They do not provide a reasonable system of inspection, calculated to protect the public from imposition. They do not seek to subject the sale to reasonable regulations, but do contain provisions which, if carried into effect, would wholly prevent the makers and owners of wines and liquors made in foreign countries or in the other States from exercising the *right* of free commerce under the Constitution. At the most, it can only be said that such persons can be permitted to send their property into South Carolina for sale if the state authorities think fit to allow them that *privilege*.

Nor, even if allowed this restricted privilege of importation, are they permitted to sell their property for what it is worth in the market, because they can sell only through a county dispenser, who is compelled to give a bond in the penal sum of three thousand dollars, conditioned that he will not sell intoxicating liquors at a price other than that fixed by the state board of control. This provision not merely hampers the citizens of the other States in their exercise of the right of trade and commerce, but deprives the residents of the State of the right to purchase articles of a commercial character at prices regulated by open competition.

It may be said that such a construction of the act of Congress would deprive it of actual operation — that the power and laws of the States would be left just as they were before its passage. But, not infrequently, courts have said that there are statutes that are merely declaratory of the law as

it previously existed. And such declaratory statutes are not
without value when they serve to elucidate existing law, or
to remove uncertainty when decisions or prior enactments are
supposed to conflict. The act in question may well be re-
garded as a legislative attempt to define the boundaries
between Federal and state powers in respect to interstate
commerce in intoxicating liquors; and this court, in the cases
of *In re Rahrer* and of *Scott* v. *Donald*, and in the recent case
of *Rhodes* v. *Iowa*, *ante*, 412, has so treated it. But it cannot,
as I think, be either interpreted or sustained as an effort to
transfer the regulative control in matters of Interstate Com-
merce from the Nation to the States.

The opinion of the majority, as I read it, fails to recognize
frequent and well considered decisions of this court, and seems
to justify a brief reference to them.

In *Brown* v. *Maryland*, 12 Wheat. 419, an act of the State
of Maryland imposing penalties on all importers of foreign
articles or commodities, including wines and spirituous liquors,
if they should sell the same without having first procured a
license from the state authorities, was held repugnant to the
provision of the Constitution of the United States, which
declares that "no State shall, without consent of Congress,
lay any impost, or duty on imports or exports, except what
may be absolutely necessary for executing its inspection
laws," and to that which declares that Congress shall have
power " to regulate commerce with foreign nations, among
the several States, and with the Indian tribes." In the course
of his reasoning Chief Justice Marshall said: " The object of
the Constitution would be as completely defeated by a power
to tax the article in the hands of the importer the instant it
was landed, as by a power to tax it while entering the port.
There is no difference, in effect, between a power to prohibit
the sale of an article and a power to prohibit its introduction
into the country. The one would be a necessary consequence
of the other. No goods would be imported if none could be
sold."

And again: "If this power to regulate commerce reaches
the interior of a State, and may be there exercised, it must

be capable of authorizing the sale of those articles which it introduces. Commerce is intercourse; one of its most ordinary ingredients is traffic. It is inconceivable that the power to authorize this traffic, when given in the most comprehensive terms, with the intent that its efficacy should be complete, should cease at the point when its continuance is indispensable to its value. To what purpose should the power to allow importation be given, unaccompanied with the power to authorize a sale of the thing imported? Sale is the object of importation, and is an essential ingredient of that intercourse, of which importation constitutes a part. It is as essential an ingredient, as indispensable to the existence of the entire thing, then, as importation itself. It must be considered as a component part of the power to regulate commerce. Congress has a right, not only to authorize importation, but to authorize the importer to sell. . . . The power claimed by the State is, in its nature, in conflict with that given to Congress; and the greater or less extent in which it may be exercised does not enter into the inquiry concerning its existence."

*Walling* v. *Michigan*, 116 U. S. 446, was a case wherein was brought into question the validity of a statute of the State of Michigan, which imposed a tax or duty on persons who, not having their principal place of business within the State, engage in the business of selling liquors, to be shipped into the State; and it was held that a discriminating tax imposed by a State, operating to the disadvantage of products of other States when introduced into the first mentioned State, is, in effect, a regulation of commerce between the States, and as such a usurpation of the power conferred by the Constitution upon Congress. Replying to the contention on behalf of the statute, that it was passed in the exercise of the police power of the State, Mr. Justice Bradley said: " This would be a perfect justification of the act if it did not discriminate against the citizens and products of other States in a matter of commerce between the States, and thus usurp one of the prerogatives of the national legislature. The police power cannot be set up to control the inhibitions of the Fed-

eral Constitution, or the powers of the United States Government created thereby."

In *Robbins* v. *Shelby County Taxing District*, 120 U. S. 489, it was. held that interstate commerce cannot be taxed at all by a State, even though the same amount of tax should be laid on domestic commerce, or that which is carried on solely within the State.

A law of the State of Iowa forbidding any common carrier from bringing within that State, for any person or corporation, any intoxicating liquors from any other State or Territory, without a permit from the state authorities, was held void in the case of *Bowman* v. *Chicago & Northwestern Railway*, 125 U. S. 465, and the court, through Mr. Justice Matthews, said: "Here is the limit between the sovereign power of the State and the Federal power. That is to say, that which does not belong to commerce is within the jurisdiction of the police power of the State, and that which does belong to commerce is within the jurisdiction of the United States. . . . The same process of legislation and reasoning adopted by the State and its courts would bring within the police power any article of consumption that a State might wish to exclude, whether to that which was drank or to food and clothing."

By an act passed in 1871, the legislative assembly of the District of Columbia subjected persons selling imported goods without a license to penalties, and this act was held invalid in *Stoutenburg* v. *Hennick*, 129 U. S. 141; and in disposing of the contention that Congress must be regarded as having authorized or adopted this legislation, Mr. Chief Justice Fuller said: "In our judgment Congress, for the reasons given, could not have delegated the power to enact the third clause of the twenty-first section of the act of assembly, construed to include business agents such as Hennick; and there is nothing in this record to justify the assumption that it endeavored to do so, for the powers granted to the District were municipal merely, and although by several acts Congress repealed or modified parts of this particular by-law, these parts were separably operative and such as were within the scope of municipal action, so that this Congressional legislation can-

not be resorted to as ratifying the objectionable clause, irrespective of the inability to ratify that which could not have been originally authorized."

In *Minnesota* v. *Barber*, 136 U. S. 313, this court held invalid a statute of the State of Minnesota, which made it a matter of fine or imprisonment for any one to sell any fresh beef, mutton, lamb or pork which had not been inspected in a manner prescribed in the act. Referring to the contention, in behalf of the State, that there was no discrimination against the products and business of other States for the reason that the statute requiring an inspection of animals on the hoof, as a condition for the privilege of selling in the State, was applicable alike to all owners of such animals, whether citizens of Minnesota or citizens of other States, this court, through Mr. Justice Harlan, said: "To this we answer that a statute may, upon its face, apply equally to the people of all the States, and yet be a regulation of Interstate Commerce which a State may not establish. A burden imposed by a State upon Interstate Commerce is not to be sustained simply because the statute imposing it applies alike to the people of all the States, including the people of the State enacting such statute. The people of Minnesota have as much right to protection against the enactments of that State, interfering with the freedom of commerce among the States, as have the people of other States. Although this statute is not avowedly, or in terms, directed against the bringing into Minnesota of the products of other States, its necessary effect is to burden or affect commerce with other States, as involved in the transportation into that State, for the purposes of sale there, of all fresh beef, veal, mutton or pork, however free from disease may have been the animals from which it was taken."

We did not find it necessary in *Scott* v. *Donald* to pass upon the validity of a scheme whereby a State should seek to establish itself as a trader in articles of commerce, and to punish as criminals all persons who should attempt to deal in such articles. Nor has the court seen fit to discuss that question in the present case. It may be that, if confined to articles of

state production, such a scheme might not be open to objections on Federal grounds. But where a State proposes to create a monopoly in articles which its own legislation recognizes as proper subjects of manufacture, sale and use, and where those articles are a part of international and Interstate Commerce, it is, I submit, too plain to call for argument that such an attempt does not comport with that freedom of trade and commerce, to preserve which is one of the most important purposes of our Federal system.

If these views are sound, then the acts of South Carolina in question, in so far as they seek to prevent citizens of that State from importing for their own use wines and liquors, and to arbitrarily forbid, and not by reasonable regulations, control sales of such articles when imported, are void as an unconstitutional interference with Interstate Commerce.

I think the decree of the Circuit Court should be affirmed.

I am authorized to state that the CHIEF JUSTICE and MR. JUSTICE McKENNA concur in the views of this opinion.