Minshall, J.
From the agreed statement of facts it appears that on March 23, 1898, the defendant below, Emil Stevens, as the agent of the manufacturer located in the state of West, Virginia, sold a keg of beer to a person in Mt. Pleasant township, in Jefferson county, the township having before that time by a vote of its electors, availed itself of the provisions of the local option law, prohibiting the sale of intoxicating liquors in such townships as a beverage (85 Laws, 55). The sale was made in an unbroken package as a beverage and not for any of the permitted purposes specified in the law. Prior to what is known as the Wilson act, adopted by congress August 8, 1890, such a sale under the previous decisions of the supreme court of the United States, would have been permissible, notwithstanding any law of the state prohibiting the same, it having been held that until the package is broken the article remains within the protection of inter-state commerce over which the states have no control. But the act just referred to changed the law of the United States in this regard, and provided,
“That all fermented, distilled or other intoxicating liquors or liquids, transported into any state or territory, or remaining therein for use, consumption, sale or storage therein, shall, upon arrival in such state or territory, be subject to the operation and effect of the laws of such state or territory enacted in the exercise of its police powers, to the same extent and in the same manner as though such liquids or liquors had been produced in such state or terri *605 tory, and shall not be exempt therefrom by reason of being introduced therein in original packages or otherwise.” (26 Stat., 313.)
Notwithstanding the plain power here conferred on the states in the exercise of the police power to regulate the traffic in intoxicating liquors, irrespective of whether the traffic be interstate or domestic, it is contended that to be a police regulation within the above statute of the United States, the prohibition of the sale of intoxicating liquors must be absolute; and because as claimed, the local option law permits the sale of cider, and wine manufactured from the pure juice of the grape, it is not a proper exercise of the police power within the act of congress. There is nothing in the language of the statute that gives countenance to such construction. It makes all intoxicating liquors, transported into any state for sale or consumption, subject to the operation and effect of all laws of such state enacted in the exercise of its police powers. There is no purpose manifested here as to what shall be the character of these laws, other than that they shall be of a police nature; and any law that regulates the traffic is of a police nature, and within the above statute, unless it should discriminate against the products of other states.
The contention is based upon a misconception of some things said in Scott v. Donald, 165 U. S., at p. 100. That it is a misconception is clearly pointed out by Justice White in the subsequent case of Vance v. Vandercook, 170 U. S., 438, 446. This having been pointed out, it is then said: “From the fact that the state law permits the sale of liquor, subject to particular restrictions and only on enumerated conditions, it does not follow that the law is not a manifestation of the police power of the state. The plain purpose of the act of congress having been to allow state regulations to operate upon the sale of original packages of intoxicants coming *606 from, another state, it would' destroy the obvious meaning to construe it as permitting the state laws to attach and control the sale only in case the state absolutely forbade sales of liquor, and not to apply in case the state determined to restrict or regulate the same.” The local option law, section 2, prohibits the sale of all intoxicating liquors as a beverage, or the keeping of a place therefor, in all townships availing themselves of its provisions. It, however, permits the manufacture and sale of cider, and the sale of wine manufactured from the pure juice of the grape, cultivated in this state, but prohibits the keeping of a place where wine and cider are sold as a beverage. It also permits the sale by a registered druggist of pure wine or liquors for mechanical, medicinal or sacramental purposes. The law seems sufficiently drastic, and, if enforced, must conduce to the peace, good order and sobriety of a township; and is therefore in every sense a police regulation. The constitutional validity of the law was sustained in a well considered opinion by Dickman, J., in Gordon v. State, 46 Ohio St., 607; and “the overwhelming preponderance of authority,” as said by Black, is the same way. See his work on Intoxicating Liquors, Sec. 45.
A somewhat elaborate argument has been made to show that under the local option law the defendant had the right to sell beer by the keg, being the agent of a manufacturer. The argument is based on the provision of the Dow law, which permits the manufacturer to sell at his place of business in quantities of one gallon or more at any one time. The two laws are, however, different systems adopted by the legislature for the purpose of regulating the evils resulting from the traffic in intoxicating liquors, under the power conferred by section 18 of the schedule, and are not to be construed together; that is the meaning of the language as limited in the one, cannot *607 be referred to to ascertain the meaning of the language used in the other. In either case the language employed must be interpreted with reference to the object and purpose of the act in which it is found. The Dow law seeks to regulate the evils resulting from the traffic, by imposing a tax on it and the place where it is carried on; the local option law seeks to regulate the evils by prohibiting the traffic in intoxicating liquors as a beverage in any form at any place in a township where the people have availed themselves of its provisions.
But it may be said, and is probably true, that, so far as the local option law restricts the sale of wine to that manufactured from the pure juice of the grape “cultivated in this state,” it is invalid as .a discrimination in favor of domestic wine. This, however, is not necessarily an integral part of the law, and does not therefore affect it in its entirety. The discrimination being, for the reason stated, invalid, may be disregarded, so that wine manufactured from the pure juice of the grape, cultivated in another .state, may be sold under the same restrictions imposed on wines produced from grapes cultivated in this state. Tierman v. Rinker, 102 U. S., 123. The extent, however, to which this may be done is quite limited: It cannot be sold as a beverage at any place kept therefor in the township (last clause, section 2). As to whether it could be peddled through the township as a beverage, we are not called on to determine. But in view of the purpose and object of the law — the prevention of intemperance — we may say that such a construction would be quite doubtful.
But there is, in the law, no discrimination in favor of beer produced in this state; and the only purpose of mooting the question here, is to show that, however decided, it cannot affect the whole statute. It will stand with the invalid clause eliminated by the force and effect of the commercial clause, as well *608 as by that of the equal privileges clause, of the federal constitution.
We see no error in the record and the judgment is

Affirmed.