KANSAS CITY BREWERIES CO. v. TRICKETT et al.

(Circuit Court, D. Kansas, First Division. June 17, 1907.)

No. 8,523.

COMMERCE (§ 40*)—INTERSTATE COMMERCE—INTOXICATING LIQUORS.

Under the interstate commerce clause of the Constitution, intoxicating liquors, lawfully purchased in good faith in one state by a resident of another state, may lawfully be delivered to the purchaser in the state of his residence, and the carrier and the persons and equipment employed in such carriage are entitled to protection by the courts from unlawful

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

interference in the state of delivery as instruments of interstate commerce, whether or not such interference proceeds from those assuming to act under authority of state laws.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 29, 30; Dec. Dig. § 40.*]

In Equity. Suit by the Kansas City Breweries Company against C. W. Trickett and others. On motion for preliminary injunction. Granted as to one defendant.

Harkless, Crysler & Histed and A. L. Berger, for complainant.
Keplinger & Trickett, for defendant Trickett.

POLLOCK, District Judge. Complainant, a citizen of the state of Missouri, presented its bill of complaint against C. W. Trickett, the duly appointed assistant Attorney General of the state, in Wyandotte county, James Porter, the sheriff, and Joseph Taggart, the county attorney of said county, David E. Bowden, the chief of police, and Ralph Nelson, city attorney of Kansas City, Kan., and Newton V. Reicheneker, agent for the receivers appointed by the Supreme Court of the state in litigation therein pending and also a deputy sheriff of Wyandotte county, praying an injunction against said defendants, and each of them, restraining them from unlawfully interfering with the complainant, its agents, servants, and employés, in the carrying on of its lawful and established business of selling, within the state of Missouri, its manufactured products, consisting of beer, malt, ale, malt extract, and other like products, to citizens of this state and making delivery thereof to inhabitants and residents of this state in the completion of such contracts of purchase so made in the state of Missouri. The bill charges, in substance: That while engaged in the conduct of such lawful interstate business, in a lawful manner, defendants, their agents and servants, without authority or right to so do, did seize and hold the teams, wagons, and harness of complainant and those employed by it to make deliveries of its products so sold, and did arrest, or cause to be arrested, the drivers of the teams and others lawfully engaged in making deliveries of its goods so sold to persons resident in this state. That complainant has built up and has a large, well-established, and lucrative business in the city of Kansas City, Mo., in which city and state, under the laws thereof, the manufacture, sale, and delivery of malt liquors by complainant is a legitimate and lawful business. That complainant has, at large cost and expense, built up and has a lucrative trade and established business with inhabitants and residents of this state, in the transaction of which business it sells in the state of Missouri to residents and inhabitants of this state its malt products and makes delivery thereof in the original boxes, bottles, and packages to such purchasers in good faith, in pursuance of sales made in the state of Missouri. That defendants threaten to, and unless enjoined and restrained by order of this court will, by unlawful interference and violence, break up and destroy the business of complainant so lawfully done and performed under the Constitution and laws of this country. On the presentation

of this bill duly verified, a restraining order was issued. Thereafter the cause came on for hearing on this application for a temporary injunction, and the same stands submitted on affidavits and oral arguments of solicitors.

The law of the case presented by the bill is well settled by the repeated decisions of the Supreme Court. In Vance v. W. A. Vandercook Company, 170 U. S. 438, 18 Sup. Ct. 674, 42 L. Ed. 1100, Mr. Justice White, delivering the opinion of the court, says:

"In the inception it is necessary to bear in mind a few elementary propositions, which are so entirely concluded by the previous adjudications of this court that they need only be briefly recapitulated:

"(a) Beyond dispute the respective states have plenary power to regulate the sale of intoxicating liquors within their borders, and the scope and extent of such regulations depend solely on the judgment of the lawmaking power of the states, provided always they do not transcend the limits of state authority by invading rights which are secured by the Constitution of the United States, and provided, further, that the regulations as adopted do not operate a discrimination against the rights of residents or citizens of other states of the Union.

"(b) Equally well established is the proposition that the right to send liquors from one state into another, and the act of sending the same, is interstate commerce, the regulation whereof has been committed by the Constitution of the United States to Congress, and hence that a state law which denies such a right, or substantially interferes with or hampers the same, is in conflict with the Constitution of the United States."

In Rhodes v. Iowa, 170 U. S. 412, 18 Sup. Ct. 664, 42 L. Ed. 1088, Mr. Justice White, delivering the opinion of the court, says:

"We think that, interpreting the statute by the light of all its provisions, it was not intended to and did not cause the power of the state to attach to an interstate commerce shipment, whilst the merchandise was in transit under such shipment, and until its arrival at the point of destination and delivery there to the consignee, and of course this conclusion renders it entirely unnecessary to consider whether, if the act of Congress had submitted the right to make interstate commerce shipments to state control, it would be repugnant to the Constitution."

The same learned justice, in delivering the opinion of the court in Heymann v. Southern Railway Company, 203 U. S. 270, 27 Sup. Ct. 104, 51 L. Ed. 178, 7 Ann. Cas. 1130, says:

"As the general principle is that goods moving in interstate commerce cease to be such commerce only after delivery and sale in the original package, and as the settled rule is that the Wilson law was not an abdication of the power of Congress to regulate interstate commerce, since that law simply affects an incident of such commerce by allowing the state power to attach after delivery and before sale, we are not concerned with whether, under the law of any particular state, the liability of a railroad company as carrier ceases and becomes that of a warehouseman on the goods reaching their ultimate destination before notice and before the expiration of a reasonable time for the consignee to receive the goods from the carrier. For, whatever may be the divergent legal rules in the several states concerning the precise time when the liability of a carrier as such in respect to the carriage of goods ends, they cannot affect the general principle as to when an interstate shipment ceases to be under the protection of the commerce clause of the Constitution, and thereby comes under the control of the state authority."

Mr. Justice Brewer, delivering the opinion of the court in Express Company v. Kentucky, 206 U. S. 129, 27 Sup. Ct. 606, 59 L. Ed. 987,

decided May 13th of the present year, in reversing the court of Appeals of Kentucky says:

"Much as we may sympathize with the efforts to put a stop to the sales of intoxicating liquors in defiance of the policy of a state, we are not at liberty to recognize any rule which will nullify or tend to weaken the power vested by the Constitution in Congress over interstate commerce."

In the light of the above-adjudicated cases and many others from the Supreme Court, there can be no question but that complainant may in Missouri lawfully sell to a resident of this state its beer, or other malt liquor products, and that, in pursuance of such contract of sale, it may deliver its product so sold in this state to the purchaser. If the contract of sale and purchase be made in good faith, that the carrier of such goods from the state where sold to the state in which the delivery is to be made is engaged in interstate commerce, and that the carrier, the goods sold, and the equipment employed for the purpose of such carriage is entitled to and will be protected by the courts under the interstate commerce clause of the federal Constitution, from such unlawful interference and violence as seeks to destroy such business, whether such interference proceeds from those assuming to act under authority of state laws, or not, and it matters not whether the purchase price of such products, carried in interstate shipment, be paid at the time and place of purchase or at the date and place of delivery so long as the purchase be lawfully made in good faith, in a foreign state, and in pursuance of the contract of purchase the goods are carried into this state for delivery. American Express Company v. Iowa, 196 U. S. 133, 25 Sup. Ct. 182, 49 L. Ed. 417.

The controversy in this case arises, however, more from the facts involved than from any disagreement as to the law of the case. It was not seriously contended at the hearing, and the evidence does not warrant the granting of any relief by temporary order against defendants Porter as sheriff, Bowden as chief of police, Taggart as county attorney, or Nelson as city attorney. Therefore the restraining order against said defendants heretofore granted must be and is set aside and annulled.

From a review of the evidence, it quite clearly appears that on the 14th and 15th days of May, while complainant through its agents, servants, employés, and transfermen employed for such purpose, were engaged in the delivery of beer in the original boxes, bottles, and packages, in pursuance of bona fide orders presented to complainant in Missouri and there accepted and filled by it for delivery in Kansas City, Kan., such agents and employés were unlawfully set upon and arrested, the beer being delivered was taken and retained, the teams and wagons owned and driven by the parties making the delivery were seized and driven off by certain persons acting or claiming to act under the authority of the laws of this state, and such drivers and deliverymen were threatened with arrest, force, and violence in case they did not desist from again engaging in such lawful interstate business. The only question arises over the identity of such offenders. In the case of defendant Newton V. Reicheneker there is little or no room for doubt. It is conclusively shown, by the evidence, that with-

out the authority, knowledge, or consent of his principals he did on the 11th day of May, 1907, issue the following unwarranted order to the sheriff of Wyandotte county, and the chief of police of Kansas City, commanding them by virtue of his supposed authority to interfere with all the conveyances and employés of the parties therein named, whether such parties at the time should be engaged in lawful interstate commerce or otherwise, as follows:

"Dear Sir: By the authority as agent of the receivers of the Supreme Court of this state, I ask you to assist me in packing up all brewery wagons marked as follows: Interstate Transfer Company, National Transfer Company, I. Pelzman, P. Shoenhoffen, T. R. Snyder, Ferd Heim, Heim Brewing Company, Rochester Brewery Company, Kansas City Breweries Company, T. J. Blick Transfer Company, and forthwith take possession of same and deliver them to the Gleed & Jones stables at 5th and State Ave. In regard to the drivers of same they should be turned loose unless they refuse to give up said wagons. In case of refusal to give up said wagons arrest said drivers also.

"Yours respectfully,    Newton V. Reicheneker, Agent for Receivers."

It is further shown the persons seizing the wagons and teams and arresting the drivers in this instance claimed the right to do so without a warrant because acting under authority from the receivers. From all which, I am of the opinion the unlawful acts in this case were done under the direction of said Reicheneker. Therefore a temporary injunction as prayed will be granted against defendant Newton V. Reicheneker until the further order of this court upon the giving by complainant of a bond in the sum of $2,500 to be approved by the clerk of this court.

As to the defendant C. W. Trickett, the evidence leaves the case more in doubt. It is quite clear the son of said Trickett took a' very active part in the unlawful and unwarranted proceedings, and that he asserted he was acting under the directions and advice of his father. The evidence further discloses he telephoned for his father, who came upon the scene after the teams, wagons, and beer had been seized and released the teams and wagons. It further appears Trickett, as assistant Attorney General, caused warrants to issue and procured the arrest of the drivers of the wagons. On the other hand, the defendant Trickett positively disclaims any participation in the unlawful seizures made or any intention of violating the right of complainant, its agents, servants or employés, while engaged in the transaction of interstate business. On the whole evidence, I find the restraining order against C. W. Trickett may be set aside, and as to him no temporary injunction will now issue, with leave, however, to complainant, by supplemental bill and additional proofs, to again apply, shall the necessity for such order arise in the future to protect complainant from interference with its purely interstate business, conducted in good faith and in lawful manner.

It is so ordered.