## STATE v. HOLLEYMAN.

INTERSTATE COMMERCE—DISPENSARY LAW—LIQUORS—POLICE POWERS.—
A package of whiskey sold in North Carolina by a resident distiller to a resident of this State, for personal use, and by the North Carolina distiller delivered in that State to the South Carolina purchaser, and by him transported in a buggy from North Carolina into South Carolina, does not arrive in South Carolina so as to be subject to the police regulations of the Dispensary law as against interstate commerce regulations, until the purchaser arrives, with his buggy and whiskey, at his home in this State. *Four members of Court en banc dissenting.*

"CONTRABAND" LIQUORS discussed.

CONFLICT OF INTERSTATE COMMERCE UNDER WILSON ACT as to liquors with Dispensary law discussed.

Before BENET, J., Chesterfield, April term, 1897. Reversed.

Indictment against Charles Holleyman and Charles Mixon for transporting liquors in night time. The following is so much of the charge of the trial Judge as pertains to the questions discussed:

In this case you have heard arguments based upon the assumption of the fact that these parties purchased the liquor outside of the State, and had the right to bring it in the State, and that in doing so they were not breaking the law of this State. I charge you, that a man not only has the right to buy intoxicating liquors in this State, but he has the right to buy intoxicating liquors outside of the State. I mean, a citizen of this State has that right, and the law permits one to bring in from outside the State one gallon, as personal baggage, I believe is the expression, and he may bring in more than one gallon under certain restrictions. He is not forbidden to purchase outside the State. He may purchase to any amount. He can bring in one gallon without any restrictions as personal baggage; that is, when he is accompanying the gallon himself. He can bring in no more without complying with certain requirements of the law. You have seen, therefore, that that one gallon recognizes, to some extent, the doctrine of personal use. That brings us to the crucial question in this case. The State charges that these defendants handled and hauled contraband corn whiskey in the night time. While I have said that a man has the right, recognized by our law, to purchase whiskey outside the State, has he the right to bring it in the State and haul it through the State? or is such an act done in the night time a violation of the law? The word "contraband" is used in the indictment properly, and that requires explanation. The law itself has defined what is meant by contraband liquor. Listen while I read to you what the law says shall be regarded as contraband liquor. After having enumerated the various kinds of intoxicating liquor, the act says: "All such liquors, except when bought of a State officer authorized to sell the same, or in the possession of one who is authorized to sell the same, and having been duly tested by the chemist

of the South Carolina College and found to be chemically pure, are declared to be contraband and against the morals, good health and safety of the State." So, also, in another section, after providing for the examination and testing of all such liquors by the State chemist, and the furnishing of certificates that they have been so tested, the law says: "Without such certificates, any package containing liquors which shall be shipped from place to place within the State, or delivered to the consignee by any railroad, express company or other common carrier, shall be regarded as contraband and may be seized without warrant," and so forth. Then, also, the following: "All such liquors in this State, except dispensary liquors and those passing through the State in transit, going through the State to points beyond this State, shall be deemed contraband, and may be seized in transit without warrant." So, also, in another section: "All alcoholic liquors, other than domestic wines, which do not have on the package in which it is contained a label and certificate going to show they have been tested by the chemist of the South Carolina College and purchased from a State officer authorized to sell them, are hereby declared to be contraband, and upon seizure will be forfeited to the State: *Provided,* That this section shall not apply to liquor held by owners of registered stills in bonded warehouses." Then comes this important section: "Persons having liquor which they wish to keep for their own use may throw the protection of the law around the same by furnishing an inventory of the quantity and kind to the State commissioner, and apply for certificates to affix thereto."

So, gentlemen, I have endeavored to give you what the law itself says shall be regarded as contraband liquors. Has the State in this case satisfied you that the whiskey conveyed by these parties was or not contraband? If you are satisfied from the testimony that the liquors found in the possession of these defendants was contraband liquor under these definitions, then, if that be the case, and they were hauling it in the night time, the law declares that handling or hauling or

14—55

transporting from place to place of contraband liquors in the night time is a misdemeanor, and punishable under the dispensary law.    In any further instructions in the law that I give you, I shall be guided by the requests which have been submitted by defendants' counsel, which I shall pass upon, and either approve or reject as the case may be.

Mr. Pollock: Before leaving the portion of the charge your Honor has just gone over. I would like your Honor to charge the jury whether a party can carry liquors that come from the dispensary in the night time.    Your Honor has charged the jury that they cannot carry contraband liquor in the night—I would like for your Honor to charge whether there is any penalty for carrying liquor from the dispensary in the night time.

By the Court: There is no such question as that in this case.    As there is no evidence in the case to which the law can apply, it would not be proper in me to burden the charge by all that might arise in the dispensary law.

Mr. Pollock: It is not admitted that the whiskey these parties had was contraband.    That is a question for the jury.    The State must prove that it was contraband, in order to sustain the indictment.    I would like for the jury to be instructed whether it would be any offense against the law if it was not contraband.

The Court: There is no evidence in the case to which that doctrine could apply.    Whatever I might charge, it would be a moot question.    And if the case should go up to the Supreme Court, they would not pass upon it, because it did not arise in the case, and should not have been charged by the presiding Judge.

Mr. Pollock: I would like to ask your Honor, also, to charge whether or not shipping from another State into this State is the same as shipping from place to place in the same State.

The Court: Neither in law nor in fact would they be the same.

Mr. Pollock: I would like for your Honor to state

whether the mere fact of their having gotten into this State and carrying it from that point to another place in the State, whether that would be carrying it from place to place.

The Court: That would be a matter for the jury upon the evidence. It is for them in this case, from the testimony, to say whether or not this liquor came from outside the State or was only being taken from place to place within the State.

And now, Mr. Foreman and gentlemen, I take up the defendants' requests to charge:

1st. "The defendants admit that on the date named in the indictment they were bringing in and transporting liquor in the night time, but they set up as a matter of defense, in justification thereof, that they were transporting it from the State of North Carolina into the State of South Carolina—that they were engaged in interstate commerce." That is a defense which they set up. There is no law in that at all; therefore, there is no instruction to give. But the effect of that admission and that defense they set up is to put on them the burden of proving it as a fact. If they were transporting it from North Carolina into South Carolina, they are not required to prove that beyond a reasonable doubt, but by the preponderance of the evidence. And it is for you to say whether it is true, or whether you are satisfied by the greater weight of the testimony, that the liquor which they admit they were hauling—bringing in and transporting in the night time—whether they were actually importing it from North Carolina or simply taking it from one point to another in this State. You must decide that.

2d. "It is a question of fact for the jury to pass upon and determine, if they were transporting this liquor from without the State into this State." I will just so charge you. You are to find that fact, and all the facts in the case.

3d. "Whenever a commodity has begun to move as an article of trade from one State to another, commerce in that commodity has commenced," and "any carriage of goods which crosses a State line is interstate commerce." "Commerce is intercourse, and the doctrine of interstate com-

merce applies to every form of traffic, transportation, and communication. It extends from the horse with its rider to the stage-coach; from the sailing vessel to the steamboat; from the coach and steamboat to the railroad, and from the railroad to the telegraph." I charge you that as law. Commerce is as ancient as the establishment of different communities on the face of the earth. It is as old as the most primitive form of locomotion, and interstate commerce may be carried on in this country on foot or by wagon or by caravan, as well as by railroad or steamboat or canal or river, or in any other. of.the more modern and improved forms of transportation. And to come under the meaning of the interstate commerce acts, it is not necessary that a person should convey goods that are being transported from one place to another by railroad, steamboat or stage-coach. If he chooses, he can have them conveyed in an humbler and more primitive way.

4th. "Liquors and wines are recognized as commodities which may be lawfully made, bought and sold, and must, therefore, be deemed to be the subject of foreign and interstate commerce; and so if the liquors for the handling and hauling of which the defendants herein were indicted were brought from the State of North Carolina into this State, the defendants had the right to carry them on to their destination unmolested, under the United States Constitution, and they were guilty of no breach of any valid State law in handling and hauling the same." I charge you that, with this addition: Provided, that the liquors were not contraband liquors in the sense of the dispensary law, and I have given you the definition which the law gives to contraband liquors in this State. So if a man purchase liquor in North Carolina or Georgia or anywhere else out of the State, he has the right to furnish the State commissioner with an inventory of the kind and quality, and to apply for a certificate, and to affix that certificate to the liquor and throw the protection of the law around the liquor. Until that is done, it is contraband liquor, under the definition of this law.

5th. "The Constitution of the United States confers upon Congress the power to regulate interstate commerce, and none of the several States can interfere therewith unless the Congress should confer the right to do so to the States, which it has not done." I so charge you. The control and regulation of the interstate commerce is the peculiar province of Congress. It is necessarily so. It would never do for one State to pass a law affecting the trade of another State. Congress can pass a law affecting trade in all the States alike.

6th. "It does not matter for what purpose an article is imported from another State or from a foreign country, the State cannot interfere with its bringing in or importation. It does not matter whether the importation is for personal use or for some other purpose. It is the importation, and not the use, which is protected by the Constitution of the United States; and the importation is general, and not confined to any particular class or kind of importation." I charge you that, with this addition: Unless the liquor when seized is contraband liquor. A man may purchase liquor in another State, either for personal use or for illicit sale or barter, and the bringing in the liquor would not be illegal because of the use he intends to put it to—an illicit use. That would not be sufficient to justify its seizure. But if it is found in the possession of a person in the condition which makes it contraband, then, whether it comes from another State or inside the State, it would be liable to seizure; and the handling and hauling of it in the night time would be illegal.

7th. "The only way that a State can interfere with the free importation of commodities or articles of commerce from one State into another is under an inspection law; but the act of South Carolina of 1896, known as the dispensary law, is not an inspection law." I must refuse to charge you that.

8th. "If the defendants were engaged in bringing in or importing liquors from the State of North Carolina into the

State of South Carolina at the time they were arrested, they were simply doing what they had a right to do under the Constitution of the United States, and were violating no valid State law—the United States Supreme Court having declared so much of the dispensary law of South Carolina as relates to the importation of liquors from without the State into the State to be unconstitutional, null and void." That is correct, except if the liquors in their possession were contraband liquors, then thy were not doing what they had the right to do in this State.

9th. "When a State recognizes the manufacture, sale and use of intoxicating liquors as lawful, it cannot discriminate against the bringing of such articles in and importing them from other States. Such legislation is void as a hindrance to interstate commerce." That requires explanation, gentlemen. One of the provisions of the dispensary law is that all liquors sold in this State by dispensers shall be first of all examined and tested and pronounced chemically pure, in the exercise of the police power. Therefore, I cannot charge this, because it does not speak of chemically pure liquor, but simply intoxicating liquor, some of which is by no means chemically pure. Therefore, it does not apply to the dispensary law, which attempts to provide for the sale of chemically pure liquors, and insists on the inspection of liquors brought into the State to see if they are chemically pure, and, if not, are pronounced by the law to be contraband, because, in the language of the law I have read to you, it is against the morals, good health and safety of the State. This request, therefore, is exactly in the teeth of the first section of the act.

I am further requested to charge you as follows: "The act of 1896, known as the dispensary law, does not make any provision for the inspection of liquors brought from without the State into this State other than such liquors as are sold through a dispensary." So far as I am aware, there is no especial direction that the liquors bought outside the State must be tested, but that would seem to be the logical result

of the purpose of the act as expressed here, because no liquors can be sold inside the State by dispensers that have not been tested, wherever they may be bought, outside or inside the State; and liquors found without a certificate, though they have been tested, are contraband liquors, and that must include liquors made in as well as outside of the State, and bought inside as well as outside the State.

Now, Mr. Foreman and gentlemen, if you desire to purchase liquor in North Carolina, you have a perfect right to do so in any quantity, and if you desire to have it safely transported through the State in a buggy or wagon from the border of this State to your home, the dispensary law would require, in order to keep it from being contraband liquor, that it should have certificates that it had been tested and pronounced chemically pure. Otherwise it is contraband liquor.

From verdict and sentence, defendants appeal.

*Mr. W. P. Pollock,* for appellants, cites: *Dispensary law is contrary to provisions of U. S. Constitution:* 123 U. S., 66; Con. U. S., art. I., sec. 8; 165 U. S., 58; 135 U. S., 100; 26 Stat. U. S., 313. *Dispensary law is not inspection law:* 95 U. S., 465; 136 U. S., 313; 125 U. S., 465. *Decision of U. S. Court on Federal question is binding on this Court:* 49 S. C., 535. *Error for Judge to charge jury that there is no proof of a fact:* 47 S. C., 513; 31 S. C., 235; 49 S. C., 299, 558.

*Mr. U. X. Gunter,* assistant attorney general, for Solicitor Johnson, contra.

Oct. 31, 1898. The opinion of the Supreme Court was delivered by

MR. JUSTICE POPE. The two above stated cases were heard together before Judge Benet and a jury, at the April term, 1897, of the Court of General Sessions for Chesterfield County, in this State, and both cases originated out of the

same transaction and the same state of facts, and the indict-
ments were similar in all respects excepting the names of the
defendants. The defendants were convicted, and after sen-
tence appealed to this Court on twelve grounds.

Before considering these grounds of appeal, it may not be
amiss to state briefly the facts underlying the controversy.
On the 11th December, 1897, in the night time, the defend-
ants were arrested by the officers of the law, and were found
to have in their possession twenty-one gallons of corn whis-
key. The defendants claim that they purchased this whis-
key from Hightower's distillery, in the State of North Caro-
lina, and that they were in Chesterfield County, in this State,
with the said whiskey transported in two buggies, and that
they were on their way to their homes at Lamar, in the
county of Darlington, in this State, and also that the whis-
key was purchased and so transported for the individual use
of the defendants, appellants. Each keg and jug filled with
this whiskey was claimed by one particular individual, so
that there was no joint ownership thereof. The indictments
alleged that said defendants "did unlawfully handle and haul
contraband spirituous liquors in the night time, against the
form of the statute in such case made and provided, &c."
The statute referred to was what was known as the dispen-
sary law of this State. It was admitted that no tags were
upon said liquors.

The grounds of appeal were as follows: Because his
Honor, W. C. Benet, presiding Judge, erred in charging the
jury that the dispensary law—the act of 1896—is in all re-
spects a lawful exercise of the police power by the General
Assembly of South Carolina. Because he erred in charging
the jury that a citizen of this State can bring into the State
from without the State only one gallon of intoxicating
liquors, without complying with certain requirements of the
dispensary law, and then only when he is accompanying the
same as his personal baggage. Because he erred in instruct-
ing the jury that all liquors, except such as have been bought
from a State officer authorized to sell the same, and having

been tested by the chemist of the South Carolina College and found to be chemically pure, are contraband; and he erred in instructing the jury that all liquors in this State, except dispensary liquors, and liquors passing through the State in transit, going through the State consigned to points beyond this State, shall be deemed contraband ,and may be seized without warrant; and he erred in instructing the jury that all alcoholic liquors, other than domestic wines, which do not have on the package in which it is contained a label and certificate going to show that they have been tested by the chemist of the South Carolina College and purchased from a State officer authorized to sell them, are contraband, and upon seizure shall be forfeited to the State, except liquors held by owners of registered stills in bonded warehouses. Because he erred in instructing the jury that these defendants could have gotten certificates from the State dispensary commissioner by which the liquor purchased by these defendants without the State, while said liquor was without the State, could be protected under the dispensary law. Because he erred in refusing to instruct the jury whether a citizen of this State has the right to handle and haul liquor purchased from a dispensary in the night time; and in charging the jury that there is no such question as that in this case; and in further charging the jury that there is no evidence in this case to which that law can apply. Because he erred in refusing to charge the jury that "Liquors and wines are recognized as commodities which may be lawfully made, bought, and sold, and must, therefore, be deemed to be the subject of foreign and interstate commerce; and so, if the liquors for the handling and hauling of which the defendants herein were indicted were brought from the State of North Carolina into this State, the defendants had the right to carry them on to their destination unmolested, under the United States Constitution, and they were guilty of no breach of any valid State law in handling and hauling the same;" and in adding the following proviso thereto: "Provided, that the liquors were not

contraband liquors in the sense of the dispensary law, and I have given you the definition which the law gives to contraband liquor in this State." Because he erred in refusing to charge the jury that "It does not matter for what purpose an article is imported from another State or from a foreign country, the State cannot interfere with its bringing in or importation. It does not matter whether the importation is for personal use or for some other purpose. It is the importation, and not the use, which is protected by the Constitution of the United States, and the importation is general, and not confined to any particular class or kind of importation;" and in adding the following proviso thereto: "I charge you that, with this addition: unless the liquor when seized is contraband liquor." Because he erred in charging the jury that "if liquor is found in the possession of a person in the condition which makes it contraband, then, whether it comes from another State or inside the State, it would be liable to seizure, and the handling and hauling of it in the night time would be illegal." Because he erred in refusing to charge the jury that "The only way that a State can interfere with the free importation of commodities or articles of commerce from one State to another is under an inspection law; but the act of South Carolina of 1896, known as the dispensary law, is not an inspection law." Because he erred in refusing to charge the jury that "If the defendants were engaged in bringing in or importing liquors from the State of North Carolina into the State of South Carolina, at the time they were arrested, they were simply doing what they had a right to do under the Constitution of the United States, and were violating no valid State law, the United States Supreme Court having declared so much of the dispensary law of South Carolina as relates to the importation of liquors from without the State into the State to be unconstitutional, null and void." And he erred in charging the jury: "That is correct, except that if the liquors in their possession were contraband liquors, then they were not doing what they had the right to do in this State." Because

he erred in refusing to charge the jury that "when a State recognizes the manufacture, sale and use of intoxicating liquors as lawful, it cannot discriminate against the bringing of such liquors in and importing them from other States. Such legislation is void as a hindrance to interstate commerce;" and he erred in holding that this proposition did not apply to the dispensary law. Because he erred in charging the jury, "If you are satisfied beyond a reasonable doubt that they (the liquors) in the possession of the defendants were contraband liquors, you will find them (the defendants) guilty."

At the beginning of our remarks upon the contention here presented, it is proper to state that the appellants concede that the dispensary law of this State, now to be reviewed, is conformable to the provisions of our State Constitution. So that our inquiries will be directed to the alleged want of conformity of such State law with the Constitution of the United States, or, to limit the inquiry to the precise part of the Federal Constitution, to an alleged conflict with article I., section 8, which declares: "The Congress shall have power to regulate commerce with foreign nations and among the several States and Indian tribes." Our investigations are happily limited to that commerce between the States in the matter of intoxicating liquors. And here again it is our good fortune to find a line of decisions of the United States Supreme Court which relieve our labors of much tedium. Beginning with the cases of *Bowman* v. *Railway Co.,* 125 U. S., 465; *Leisy* v. *Hardin,* 135 U. S., 100; *In re Rahrer,* 140 U. S., 545; *Scott* v. *Donald,* 165 U. S., 58; *Rhodes* v. *Iowa,* 170 U. S., 412, and *Vance et al.* v. *Vandercook Co.,* 170 U. S., 438; the United States Supreme Court has had before it some very interesting phases of the liquor problem as it entwines itself about the interstate commerce provisions of the United States Constitution. Briefly stated, the results of these cases establish these propositions: (a) Bowman *v.* R. R. Co., *supra,* held that it was not in the power of a State by its legislation, exclusive of some action by Congress, to lay

a restriction upon a common carrier (which was a railroad), to regulate commerce between its people and those of the other States of the Union, in order to effect its end, however, desirable that end might be. (b) Leisy *v.* Hardin, *supra,* held that a State law could not prevent the sale of liquors in unbroken packages which were received by the resident of the State from parties outside the State. (c) *In re* Rahrer, *supra,* held that after 8th August, 1890, at which date the Wilson bill became a law of the United States, it was in the power of a State to punish, under laws enacted under the police power of the State, any one who sold liquors in original packages from parties outside the State. (d) Scott *v.* Donald, *supra,* held that the dispensary law passed by the State of South Carolina, in those of its provisions which sought to discriminate between citizens of its own State against citizens of another State, in the privilege of receiving from parties outside the State spirituous liquors, were void, as violative of the interstate commerce provision of the Federal Constitution; or, to reproduce the language of Mr. Justice Shiras, who formulated the opinion of that Court: "It is sufficient for the present cases to hold, as we do, that when a State recognizes the manufacture, sale and use of intoxicating liquors as lawful, it cannot discriminate against the bringing of such articles in, and importing them from other States; that such. legislation is void, as a hindrance to interstate commerce and an unjust preference of the products of the enacting State as against similar products of the other States." (e) Rhodes *v.* Iowa, *supra,* held that under the Wilson bill a State could not punish a common carrier, or its agent, for moving an unbroken package of liquor from one point to another point in the State of Iowa before it delivered the same to the consignee, although the common carrier, or its agent, knew it was an unbroken package of liquor, and also held in construing the words of the act of Congress, usually called the Wilson bill, whose language is: "That all fermented, distilled and other intoxicating liquors or liquids transported into any State or Territory, or remaining

therein, shall upon arrival in such State or Territory, be subject to the operation and effect of the laws of such State or Territory, enacted in the exercise of its police powers to the same extent and in the same manner as though such liquids or liquors had been produced in such State or Territory, and shall not be exempt therefrom by reason of being introduced therein in original packages or otherwise;" that the word "arrival," as used in this act, "by the light of all its provisions, it was not intended to and did not cause the power of the State to attach to an interstate commerce shipment, whilst the merchandise was in transit under such shipment and until its arrival at the point of destination and delivery there to the consignee." (f) Vance *v.* Vandercook, *supra,* held in construing the dispensary law enacted in 1896, and the identical act now undergoing consideration, that, 1. Under the act of August 8, 1890, the restrictions and regulations of State laws become operative on the original package of intoxicating liquors imported into a State before the sale thereof, and, therefore, such packages cannot be sold if the State law forbids the sale, or can be only so sold in the manner and form prescribed by the State regulations. 2. A State law cannot be void because in excess of State authority, when it is but the execution of a power lawfully vested in the legislature of the State to forbid the sale of liquors in the original packages. 3. From the fact that a State law permits the sale of liquor subject to particular restrictions and only upon enumerated conditions, it does not follow that the law is not a manifestation of the police power of the State. 4. The act of Congress of August 8, 1890, subjects the sale of original packages of intoxicating liquors to State laws which restrict or regulate such sales, as well as to laws which forbid them. 5. Giving to State officers the exclusive right to purchase all the intoxicating liquors to be sold in the State, does not make a State law regulating such sales inherently discriminatory, and, therefore, unconstitutional, on the ground that the officers have arbitrary discretion in determining where and from whom they will purchase

liquor.    6.  The fact that the provisions omitted from a new law had been before its enactment declared to be unconstitutional, affords a conclusive demonstration of their inconsistency with the new law.    7.  Authorizing the use by a resident of wine or liquor made by him for such purpose, does not make an unconstitutional discrimination.    8.  Compelling a resident of the State who desires to order intoxicating liquors from another State for his own use, first to communicate his purpose to a State chemist, and depriving any non-resident of the right to ship into the State any intoxicating liquors unless previous authority is obtained from State officers, are unconstitutional regulations of interstate commerce.    9.  The right of a citizen to carry on interstate commerce is conferred by the Constitution of the United States, and its exercise depends solely upon the will of the person engaged therein, and cannot be in advance controlled or limited by the State in any department of its government.    10.  An inspection law must not substantially hamper or burden the constitutional right, on the one hand, to make, and, on the other hand, to receive an interstate shipment.    11.  A requirement that a sample shall be sent in advance for inspection before intoxicating liquors are brought into the State, cannot be supported as an inspection law, but such a law must, at least, provide for some inspection of the article imported.

Since all the questions presented except one, seem to be Federal questions, we very naturally turn to the decisions of the Supreme Court of the United States for their decision, and it is to the two latest decisions that we must turn, for the appellant, in common with many others, has given a force and meaning to the decision of Scott *v*. Donald, *supra,* which the Supreme Court of the United States in its last decision—Vance *v*. Vandercook, *supra*—has taken occasion to point out.    The appellant, as before remarked, seems to attribute to Scott *v*. Donald, *supra,* this meaning, namely, that the dispensary act of 1895 was not in any of its features a valid exercise of the police powers of the State, which the

Court in the case just cited was careful to avoid. When the facts underlying the controversy in Scott *v.* Donald, *supra*, are considered, it will be seen that Scott, the appellee, had ordered three shipments of alcoholic liquors to be made to him from the States of California, Maryland and New York, respectively, which shipments when so made were seized while in the hands of a common carrier, and before delivery to the consignee could be made, and the judgment of the Supreme Court of the United States held that *some* features in the act of 1895, which the State could not, in the exercise of its police power, justly because invalid, were in violation of the Federal Constitution. Hence, when the latest decision—that of Vance *v.* Vandercook, *supra*—was rendered by the United States Supreme Court, it was held that the act of 1896, amendatory of the act of 1895, was a valid exercise of the police power of the State, except when it interdicted the delivery to consignee within the State of alcoholic liquors from outside the State for the use of the consignee, but not so as to liquors which were intended to be sold by the consignees, and in passing upon the first phase of this question, as to consignees for their own use, the said Court did hold that the inspection laws were invalid. So far as these latest decisions extend, it may be said: First. That no State can interdict the delivery by a common carrier of any alcoholic liquors from without the State to a consignee within the State for his own use. Second. That when the word "arrival," occurring in the act of Congress, commonly called the Wilson bill, is to be construed, it must be held that such word means an arrival of such liquors into the hands of the consignee within the State. The trouble in connection with the cases we are now considering is that the liquors were in the hands of their owners when they crossed the threshold of this State, coming from Hightower's distillery, in the State of North Carolina, where these liquors were purchased by these three citizens of South Carolina. They may have been said to reach the consignees at the State line. As will be perceived, this is an entirely different ques-

tion from that decided in the Rahrer case, the Scott v. Donald case, or the Vance v. Vandercook case, for in each of these cases the liquors had not reached the hands of the consignees. So now we are confronted with this difficulty in the cases now at bar, the owners of these packages of liquors have in their own hands such liquors, and *are confessedly* handling and hauling such liquors in the night time, in violation of sections 33 and 37 of the dispensary act, passed in 1896. Is not the police power of the State sufficently powerful to interdict the citizens of the State from handling and hauling in the night time alcoholic liquors when the same are the owners thereof? Is it in exact keeping with the laws of the State in relation to hauling and trading in seed cotton at night? Section 280 of the Criminal Statutes of South Carolina provides: "It shall not be lawful for any person to buy or sell, or receive by way of barter, exchange or traffic of any sort, any seed cotton between the hours of sundown and sunrise * * *" This is confessedly in the exercise of the police power. Why, therefore, may not a State, in the exercise of its police power, forbid the handling or hauling of spirituous liquors at night? This also would be the exercise of the police power of the State, and cannot in any sense affect the interstate commerce laws. It should be noted, however, that these sections 33 and 37 by their terms affect "contraband liquors." A question may arise as to whether a person purchasing for his own use liquors from persons outside this State, and carrying this property with him into his own State, may not justly claim that such liquors in his hands are not "contraband liquors," and, therefore, not in violation of these sections. If a man may order for his own use spirituous liquors from another State, and have such liquors delivered to him at his own home in South Carolina, without incurring any liability therefor under dispensary law, which forbids it, relying for freedom from any such liability upon the interstate commerce provision of the United States Constitution, why may not a citizen take his buggy or wagon and go into another State and purchase

spirituous liquors, and by his own buggy or wagon transport such liquors to his home, and claim immunity therefor under the interstate commerce clause of the Constitution? We are inclined to think he could, except for section 37 of the dispensary act of 1896, 22 Stat., 147, which provides: "Any person handling contraband liquors in the night time, or delivering the same, shall be guilty of a misdemeanor, and on conviction * * *" The word contraband, used in this section, refers to any liquors other than dispensary liquors. The appellants admit that the liquors found in their possession were not dispensary liquors. When the exceptions here presented are taken up *seriatim,* it will be found that they are untenable, in the light of our views hereinbefore expressed.

As to the 5th exception, when examined it will be found to ask of the Circuit Judge a ruling upon what would be the effect of hauling liqurs in the night time which had been purchased of the dispensary. The Circuit Judge declined to rule upon the matter, for the simple reason that the liquors here involved were admitted not to have come from the dispensary. This was not error.

I think, therefore, our judgment should be, "It is the judgment of this Court that the judgment of the Circuit Court be affirmed." But the members of this Court are equally divided. Hence, under the Constitution of this State, the judgment of the Circuit Court stands affirmed.

MR. JUSTICE JONES *concurs.* I concur in affirming the judgment of the Circuit Court in these cases. The act of Congress known as the "Wilson Act," quoted in the opinion of Mr. Justice Pope, expressly leaves intoxicating liquors within the control of the police power of the State, "upon their arrival in said State." In *Rhodes* v. *Iowa,* 170 U. S., 412, reaffirmed in *Vance* v. *Vandercook Co.,* 170 U. S., 438, the Supreme Court of the United States has construed "arrival in the State," in this act, to mean "arrival at the point of destination and delivery to the consignee." Let us assume that the police power of the State can only operate

15—55

upon an article of interstate commerce after it ceases to be such in an interstate commerce transaction. When is an interstate commerce transaction as to intoxicating liquors consummated? Manifestly when such article is delivered to the consignee. In the case before us it is admitted that the whiskey was actually delivered into the hands of the buyers in North Carolina. The non-resident seller made no interstate shipment. The whiskey sold, so far as the non-resident was concerned, reached its destination when the buyers received it. Even if such a transaction between citizens of this State and a citizen of North Carolina could be called an interstate commerce transaction, it was consummated by actual delivery in North Carolina. The moment, therefore, that the whiskey in the actual custody of its owner, a citizen of this State, entered the territory or jurisdiction of this State, it became subject to the operation of the police power of the State, the commercial power of the United States having yielded its grasp when the interstate transaction was consummated by delivery. Suppose a common carrier had delivered this whiskey to the defendants at a station on or near the State line, could it be fairly contended that the whiskey had not reached it destination, because the owners in actual possession contemplated carrying it through Chesterfield County to their residences in Darlington County? Such a view would make easy the illicit traffic in intoxicating liquors, especially in border counties; for under the cover of darkness evil men could travel the country loaded with such liquors, and if an actual sale could not be proven, escape all risk under the plea of "personal use." It is surely within the police power of the State to prohibit the hauling and handling of contraband liquors in the night time, as a means to prevent or make more difficult illicit traffic under cover of night. Admitting that the State cannot confiscate as contraband intoxicating liquors, imported for personal use, while in the control and protection of interstate commerce, undoubtedly the State may declare such liquors contraband for failure to comply with State regulations, after such arti-

cles are received by the importer in this State, for then inter-state commerce control ends. Whether such State regula-tions are reasonable, as applied after the liquor ceases to be an article in interstate commerce, is a question not appertain-ing to the commercial power, but to the police power, if, in-deed, any legislation, not void on constitutional grounds, can in this State be declared void merely on the ground of un-reasonableness. We are not called upon in this case to say whether the dispensary law should be read so as to give the importer for personal use a reasonable time, after receipt of the imported liquor, in which to compiy with State regula-tions, so as to prevent such article from being regarded as contraband, in view of the provision that "persons having liquor which they wish to keep for their own use may throw the protection of the law around the same by furnishing an inventory of the quantity and kinds to the State commis-sioner, and applying for certificates to affix thereto." The defendants made no such defense; and if they had, the ques-tion would be one, not under the commercial power of the United States, but under the police power of the State. Ap-pellants stand or fall on the question whether section 37 of the dispensary law is void, as applied to the admitted facts in this case, as against the interstate commerce clause of the United States Constitution. As to this question, I have en-deavored to show that such clause has no application in this case. *Bona fide* importers for personal use, as well as im-porting illicit traffickers under the guise of "personal use," must comply with State regulations when they attach under its police power, or take the consequences. If these views are correct, the Circuit Court committed no reversible error in modifying defendants' requests to charge and in his re-fusal to charge certain requests, touching interstate com-merce. Appellants admit that they were hauling and hand-ling intoxicating liquors in the night time in this State with-out compliance with the regulation of the dispensary law, after the actual receipt by them of such liquors. Under these circumstances, such liquor was contraband.

MR. CHIEF JUSTICE MCIVER _dissents, with whom concurs_
_Mr. Justice Gary._  I cannot concur in the conclusion
reached by Mr. Justice Pope, for the reason that such con-
clusion is, as it seems to me, in direct conflict with the deci-
sions of the Supreme Court of the United States, in the
cases which will be hereinafter cited.   The precise question
presented by these appeals (for it is conceded that both of
the cases stated in the title are to be controlled by the same
principle) is whether a citizen of South Carolina residing
herein can lawfully bring into this State, _for his own use,_
spirituous liquor which he has bought in another State.  This
question has been conclusively determined, in the affirmative,
by the case of _Scott_ v. _Donald,_ 165 U. S. Rep., 58, and the
same principle there decided has been recently reaffirmed in
_Vance_ v. _Vandercook,_ 170 U. S., 438.   In the case first
cited, the action was brought against a State constable to re-
cover damages for seizing and carrying away certain pack-
ages containing spirituous liquors, belonging to the plaintiff,
which he had imported from other States, while such pack-
ages were in the hands of the common carrier, through
whose agency the packages had been brought into this
State.   The plaintiff recovered judgment below, and the
case was carried by writ of error to the Supreme Court of
the United States, where the judgment was affirmed.   Mr.
Justice Shiras, in delivering the opinion of the Court, con-
curred in by all the other Justices except one, after determin-
ing that the dispensary law of this State was not an inspec-
tion law, and is not within the scope of the act of Congress,
of the 8th of August, 1890, commonly called the "Wilson
Bill," and after holding that the dispensary law recognized
the manufacture, sale, and use of spirituous liquors as law-
ful, announced the holding of the Court in these words: "It
is sufficient for the present cases to hold, as we do, that when
a State recognizes the manufacture, sale, and use of intoxi-
cating liquors as lawful, it cannot discriminate against the
bringing of such articles in, and importing them from other
States; that such legislation is void as a hindrance to inter-

state commerce and an unjust preference of the products of the enacting State as against similar products of the other States." It is true, that the case of Scott *v.* Donald arose under the dispensary law, approved 2d of January, 1895, while the case now under consideration arose under the dispensary law, approved 6th of March, 1896; but the two acts, so far as the questions which arise in the present case are concerned, are identically the same, and hence the construction placed upon the provisions of the act of January, 1895, by the Supreme Court of the United States, must be regarded as the proper construction of similar provisions in the act of March, 1896. Indeed, we do not understand that it is claimed, in the opinion of Mr. Justice Pope, that the act of 1896 must receive a different construction from that placed upon the act of 1895 by the Supreme Court, in the case of Scott *v.* Donald, so far as the present case is concerned, perhaps for the reason above indicated. But what is absolutely conclusive, we find that in the case of Vance *v.* Vandercook, *supra,* which arose, not only after the passage of the act of 1896, but after the passage of the act of 1897— 22 Stat., 535, amendatory thereof—the Supreme Court of the United States distinctly reaffirms the ruling in Scott *v.* Donald, that a resident of this State may lawfully import from another State spirituous liquor, *for his own use,* and goes on to declare that this right arises from the Constitution of the United States, and cannot be prohibited, or materially interfered with, or in any way hampered by any State law; and the Court proceeds to hold that the provisions of the act of 1897, designed to provide for the inspection of liquor imported by a resident for his own use (which, however, have no application to the present case), doubtless enacted to avoid the effect of the decision in Scott *v.* Donald, cannot so operate, as those provisions do not impart to the act of 1897 the features of a valid inspection law, and then concludes the discussion of this branch of the case in these words: "Conceding, without deciding, the power of the State, where it has placed the control of the sale of all liquor within the

State in charge of its own officers, to provide for an inspection of liquors shipped into a State by residents of other States, for use by residents within the State, it is clear that such a law, to be valid, must not substantially hamper or burden the constitutional right on the one hand to make, and on the other to receive, such shipment." It is very obvious that the case of Vance *v.* Vandercook draws a marked distinction between the power of a State to prohibit the importation of liquor *for sale* and the power to prohibit the importation of that article *for personal use.* Under that authority, a State may prohibit the importation of liquor for sale, even in original packages, by virtue of the provisions of the act of Congress of the 8th of August, 1890, commonly called the "Wilson Bill;" but it cannot prohibit the importation of spirituous liquors by a resident of the State for his own personal use. This, being the decision of a tribunal which is confessedly the final arbiter in all questions involving the construction of the Constitution and laws of the United States, must be accepted by all other tribunals and all citizens as the settled law of the land, whether conformable to our own views or not. Applying these principles to the case in hand, the inevitable result is a reversal of the judgment below. The undisputed evidence is that these defendants, who are residents of the State of South Carolina, had gone over into the adjoining State of North Carolina and there purchased the liquor in question for their own use, and were transporting the same, in their buggies, to their homes in South Carolina. While on their way, during the night time, they were arrested by a State constable and his posse, at some point in South Carolina, their liquor and teams seized, and they placed in jail. At the next succeeding term of the Court of General Sessions, they were indicted for a violation of section 37 of the dispensary act of 1896, 22 Stat., 147, under the charge that they "did unlawfully handle and haul contraband liquors, in the night time," contrary to the provisions of said act. The case came on for trial before his Honor, Judge Benet, and a jury. Under his charge, the jury found

the defendants guilty, and from the judgments rendered they have appealed upon the several grounds set out in the opinion of Mr. Justice Pope, in which various errors are imputed to the Circuit Judge in his charge, as well as in his refusal to charge certain requests.

I do not propose to consider these grounds *seriatim,* but rather to confine myself to what I consider the controlling questions in the case. In the first place, I would remark that I do not suppose that any question can be, or will be, made based upon the fact that these defendants were not bringing this liquor into the State by the use of the agencies usually employed for that purpose, such as railroads, &c., but were bringing it into the State in their own private vehicles. Indeed, no such point has been presented by Mr. Justice Pope, and, in fact, Judge Benet expressly instructed the jury that this fact made no difference, using this language: "Interstate commerce may be carried on in this country on foot, or by wagon or by caravan, as well as by railroad or steamboat or canal or river, or in any other of the more modern and improved forms of transportation." It is suggested, however, that this case differs from the cases decided by the Supreme Court of the United States, in this respect, that in all of those cases the liquors were seized before delivery to the consignee by the common carrier, through whose agency the liquors ordered for personal use from another State were brought into this State; whereas in the case now under consideration, the liquor bought by the defendants in the State of North Carolina for their own use, was brought into this State by the owners of such liquor in their own private vehicles, and not by the agency of a common carrier, and, therefore, when these parties crossed the State line, the liquor was in the hands of the owner—had reached the possession of the consignees, so to speak—and when these parties were arrested, they were engaged in transporting the liquor to their homes in this State. But what difference this can make, I am at a loss to conceive. If a resident of this State has a right, under the interstate commerce clause,

to import into this State, through the agency of a common carrier, spirituous liquor for his own use, it is impossible for me to conceive why he may not bring liquor, which he has purchased in North Carolina for his own use, into this State in his own private vehicle.    To hold otherwise, would involve the absurdity of holding that a person may lawfully do, by an agent, what he cannot do himself.    This, as I understand it, was the view which Mr. Justice Pope seemed inclined to take; but he bases the conclusion which he reaches upon the ground that the liquor in question was "contraband," and as section 37 of the dispensary act of 1896 makes it a penal offense to handle "contraband liquor in the night time," the parties could be convicted for a violation of that section of the statute.    It is quite true that there are several sections in the act just referred to, declaring that any spirituous liquors not obtained from the dispensary authorities are contraband liquors.    But the very meaning of the term "contraband" shows that no article can be so characterized unless it is an article, the importation or exportation of which is prohibited by law.    Now if, as we have seen, the interstate commerce clause of the Constitution of the United States secures to a resident of this State the right to import from another State spirituous liquor, for his own use, it follows necessarily that such liquor cannot be regarded as contraband, and the statute of any State which undertakes to declare such liquor contraband must be held void, because in conflict with the Constitution of the United States.    A right conferred upon the citizen by the Constitution of the United States cannot be denied or destroyed by any State legislation.    If spirituous liquor be a legitimate article of commerce, as it is declared to be in the case of *In re Rahrer,* 140 U. S., at page 556, and if, as we have seen from the cases above cited, a resident of this State has a right, secured to him by the Constitution of the United States, to import spirituous liquor into this State for his own use, then it follows necessarily that a State statute which declares such liquor "contraband," and makes it a penal offense to handle

such liquor in the night time, not only materially interferes with and hampers the right secured to the citizen by the Constitution of the United States, but absolutely destroys such right, and cannot, therefore, be sustained as a legitimate exercise of legislative power.    The analogy suggested by Mr. Justice Pope, drawn from the provisions of section 280 of the criminal statutes, which make it a penal offense for any person to traffic in seed cotton, in the night time, does not hold good, for the reason that such statute does not purport to interfere with any right derived from the interstate commerce clause of the Constitution of the United States, while the object and purpose of the dispensary law is to deprive the residents of this State of such right; and for the further reason that the seed cotton act makes no discrimination between seed cotton raised in this State and that which may be obtained from another State, while the dispensary law does discriminate between liquors obtained from another State and those obtained from the dispensary—making the handling of the former, in the night time, a penal offense, while the other, in the night time, is not forbidden.

It may be said, however, that, under the provisions of the act of Congress of the 8th August, 1890, commonly called the "Wilson Bill," the legislature is permitted to enact any legislation, in the exercise of its police powers, that it may deem necessary or proper, in regard to spirituous liquors, imported into one State from another State, after such liquor has reached the hands of the owner or consignee. Such a view would completely emasculate the interstate commerce clause of the Constitution of the United States, and would effectually destroy the right thereby secured to the citizens.    Under that view, a resident of this State who ordered spirituous liquors shipped to him by rail from California, North Carolina or any other State, for his own use, would be liable, as soon as he received the liquor from the railroad depot and placed it in his wagon for transportation to his home, not only to have his liquor, but his wagon and team, seized and confiscated; and if night should overtake

him while hauling the liquor to his own home, he would further be liable to indictment for violating section 37 of the dispensary law. Indeed, if he should succeed in reaching his home unmolested, and should undertake to remove such liquor, in the night time, from one apartment in his dwelling house to another, he would be liable to an indictment for handling contraband liquor in the night time. It is very manifest, if this view should be adopted, that the right secured to the citizen by the Constitution of the United States would be as effectually denied and destroyed, as if a State should pass a statute forbidding, in the most explicit and positive terms, a resident of this State from importing into this State from another Sttate spirituous liquor for his own use; for no person would venture to import liquor from abroad if he knew that he was liable to lose such liquor as soon as it was brought within the limits of the State, and he subjected to indictment and punishment if he happened to be overtaken by night in hauling such liquor from the railroad depot to his own home. As is held in Vance *v.* Vandercook, *supra,* any State law containing provisions which "are so onerous and burdensome in their nature as to substantially impair the right" thus derived from the Constitution of the United States, or which "so hamper and restrict the exercise of the right as to materially interfere with or, in effect, prevent its enjoyment," are void, so far as such provisions are concerned; for, as is further said in the same case, in speaking of what is claimed to be the inspection features of the dispensary law, "it is clear that such a law, to be valid, must not substantially hamper or burden the constitutional right on the one hand to make, and on the other to receive, such shipment."

There are other errors pointed out by the exceptions which would be sufficient to call for the reversal of the judgments appealed from. For example, exception 9, which is fully sustained by the case of Vance *v.* Vandercook, *supra,* and exception 11, which imputes error in refusing to charge defendants' 7th request, which is nothing but a quotation from

the opinion of the Court in Scott *v*. Donald, at page 101, laying down the rule applicable to that case, in which the Court was called upon to construe and apply the dispensary law; and hence there was clearly error in refusing that request, because not applicable to the dispensary law.

There are other exceptions worthy of consideration, but what I have said sufficiently indicates the grounds of my dissent, and I do not deem it necessary to extend this opinion by considering all of the exceptions.

I am of opinion, therefore, that the judgment of the Circuit Court should be reversed.

Petition for rehearing having been filed, the Court made the following order on December 2, 1898:

A question arising under the Constitution of the United States being presented for the determination of this Court in these cases, and the opinions which have been filed showing that "the entire Court is not agreed" as to the determination of that question, it is necessary, under the provisions of sec. 12 of art. V. of the Constitution of this State, that all of the Circuit Judges shall be called to the assistance of the Supreme Court for the decision of such question.

Upon this ground the petition for a rehearing must be granted, and these cases are therefore set down for hearing on Tuesday, the 3d day of January next, at 10 o'clock A. M., in the Supreme Court room at Columbia, before the Justices of the Supreme Court and the Circuit Judges.

THE COURT *en banc* met in the Supreme Court room on January 3, 1899. Present and sitting at the hearing, the *Justices of the Supreme Court, and Judges Aldrich, Watts, Buchanan, Townsend, and Klugh.*

June 2, 1899. The opinion of the Court *en banc* was delivered by

MR. JUSTICE GARY. These two cases arose out of the same transaction, and the same state of facts. By consent

they were heard together. The indictments were identical except as to the names of the defendants. They charged that the defendants, "on the 11th day of December, A. D. 1896, with force and arms, at Chesterfield, in the county and State aforesaid, did unlawfully handle and haul contraband spirituous liquors in the night time, against the form of the statutes in such case made and provided, and against the peace and dignity of the State."

The following facts which seem to be undisputed were developed by the testimony : The defendants live near Lamar, in Darlington County, about forty miles from Chesterfield C. H. On the 11th of December, 1896, they left their homes in Darlington County and traveled by private conveyance to Hightower's distillery, in North Carolina, where they purchased about twenty-one gallons of corn whiskey, which was put up in kegs and jugs. The jugs and kegs were then placed in the defendants' buggies, and they started back to their homes. After crossing the State line and when in about two miles of Chesterfield, S. C., in the night time, they were arrested by a State constable and his posse, their liquor and teams seized, and they placed in jail. The liquor was purchased for their personal use. Up to the time of their arrest they had done no act even tending to break the continuity of the transportation, and the liquor was seized while *in transit.* The defendants were convicted, whereupon they appealed upon exceptions which will be set out in the report of the case.

The pivotal point in the case is whether the liquor was *contraband* when seized as aforesaid. If the liquor when seized came within the protection guaranteed by the Constitution of the United States to interstate commerce, all statutory enactments in South Carolina upon this subject were inoperative. Our first inquiry, therefore, will be whether it came within this protection. This will involve a construction of the Constitution of the United States relative to interstate commerce, and of the statute of the United States commonly called the "Wilson Act." Section 8, article I.,

of the Constitution of the United States provides that Congress shall have power to regulate commerce with foreign nations and among the several States and with the Indian tribes. The "Wilson Act" (26 Stat., 313,) is as follows: "That all fermented, distilled or other intoxicating liquors or liquids transported into any State or territory, or remaining therein for use, consumption, sale or storage therein, shall upon arrival in such State or territory be subject to the operation and effect of the laws of such State or territory enacted in the exercise of its police powers, to the same extent and in the same manner as though such liquids or liquors had been produced in such State or territory, and shall not be exempt therefrom by reason of being introduced therein, in original packages or otherwise." The intention of the foregoing provision of the Constitution is thus succinctly stated in the case of *Rhodes* v. *Iowa,* 170 U. S., 412: "The fundamental right which the decision in the Bowman case held to be protected from the operation of State laws, by the Constitution of the United States, was the continuity of shipment of goods coming from one State into another, from the point of transmission to the point of consignment, and the accomplishment there of delivery covered by the contract." The word "arrival" in the "Wilson Act" was construed by the Court, in Rhodes v. Iowa, *supra,* to mean when the merchandise reached its destination and delivery there to the consignee. Unless there is something in this case to take it out of the principle laid down in Rhodes *v.* Iowa, the liquor was under the protection of the United States Constitution until it reached its destination.

A statement of some of the general principles decided by the Supreme Court of the United States will show that the liquor was *in transit* as interstate commerce at the time it was seized. Interstate commerce, ordinarily, consists of three elements, to wit: 1, the purchasing of merchandise by a resident of one State from a resident of another State; 2, the delivery of the articles of commerce; and 3, the transportation thereof. The purchase may be made by the buyer in

person, or through a traveling salesman of the non-resident, or by an order sent by the purchaser to the non-resident. The delivery may be made directly to the purchaser, when the goods are sold, or when they reach their destination, in cases where they have been consigned to him.    In this case the defendants purchased the liquor and the delivery was made to them in person at the distillery in North Carolina. This is not disputed; therefore, we may eliminate from our consideration two of the elements of interstate commerce, to wit: the purchase of the liquor and its delivery.    This brings us to a consideration of the principal element of interstate commerce in this case, to wit: the transportation of the liquor.    At the time the United States Constitution was adopted, the vehicles for the convenience of travel and common carriage were insignificant as compared with those of the present day, and the transportation of merchandise from one State into another was to a great extent conducted under the supervision of the purchaser, and in vehicles belonging to him.    The right, under the Constitution, to transport merchandise was guaranteed to him; but for convenience this right, which was *primarily* in him, might be exercised through agents who undertook to deliver the goods to him at their destination.    In this case transportation began when the defendants left the distillery in North Carolina, with the intention of conveying the liquor to their homes in South Carolina, and this transportation was protected until the liquor reached that destination.    We must bear in mind that the fact that the liquors were in the possession of the defendants when they crossed the State lines, did not constitute a *delivery* to them.    The delivery had taken place at the distillery, and there was not even the semblance of any act on the part of the defendants breaking the continuity of the transportation.    Can it be contended for a moment that if the defendants had employed men to transport them and their liquor to their homes in South Carolina in buggies, that the liquor, although it was in the possession of the defendants, when they crossed the State line, would have been sub-

ject to seizure before it reached its destination? The pro-
vision of the Constitution as to interstate commerce was
intended as much for the protection of the seller as for the
protection of the purchaser. It would be anomalous to hold
that if the defendants had transported the liquor through an
agent, it would have been protected until it reached its desti-
nation and was delivered to the consignee, while, if the de-
fendants themselves undertook to transport the liquor, it was
subject to the laws of the State as soon as it came within its
borders. It would be the exercise by an agent of greater
power and the enjoyment of larger privileges than those pos-
sessed by his principal, which cannot be done. *George* v.
*Aiken,* 42 S. C., 222. To give a contrary construction to
this provision of the Constitution would place a heavy bur-
den upon interstate commerce; as, although the seizure was
made while the liquor was being transported in this State, it
would necessarily affect that part of the transportation
beyond the limits of the State. In the case of Rhodes *v.*
Iowa, the Court says: "But to uphold the meaning of the
word 'arrival,' which is necessary to support the State law,
as construed below, forces the conclusion that the act of Con-
gress in question authorized State laws to forbid the bring-
ing into the State at all. This follows from the fact that, if
'arrival' means crossing the line, then the act of crossing into
the State would be a violation of the State law, and hence,
necessarily, the operation of the law is to forbid crossing the
line, and to compel remaining beyond the same. Thus, if
the construction of the word 'arrival' be that which is
claimed for it, it must be held that the State statute attached
and operated beyond the State line, confessedly before the
time when it was intended by the act of Congress it should
have effect." So in this case it would enable the statutes of
this State to become operative beyond the State line, if the
liquor became subject to those statutes the moment it entered
the territorial limits of the State, and would thus enable a
State to defeat the provision of the Constitution guarantee-
ing protection to interstate commerce.

There is another reason why the liquor did not become subject to the statutes of the State as soon as it crossed the State line; the dispensary law allows a person to keep in his possession, for his own personal use, liquor which has been purchased from a dispensary, without requiring certificates of any kind either as to its chemical purity or that it is for personal use, to be attached thereto; liquor purchased beyond the limits of the State must receive the same treatment that is accorded to liquor purchased within the State; as the liquor was purchased by the defendants for personal use, they had the right to keep it in their possession unmolested until it was consumed in the use, as long as this privilege was allowed to persons having in their possession liquors bought from a dispensary; otherwise, there would be a discrimination in favor of the State, and interstate commerce would thereby be burdened.

As the statutes of this State were inoperative at the time the seizure was made, it becomes unnecessary to consider the exceptions complaining of error on the part of the presiding Judge in his charge as to the requirements that certain certificates should be attached to liquor purchased beyond the limits of the State, in order to prevent it from being contraband.

It is the judgment of this Court, that the judgment of the Circuit Court be reversed, and the case remanded for a new trial.

*Mr. Chief Justice McIver, and Circuit Judges Aldrich, Watts, and Buchanan concur.*

MR. JUSTICE JONES *dissents, with whom concur Mr. Justice Pope and Circuit Judges Townsend and Klugh.* Being unable to concur in reversing the judgment of the Circuit Court in these cases, I will briefly state my reasons therefor. The indictments were brought under section 37 of the dispensary act of 1896, 22 Stat., 147, which provides that "any person handling contraband liquor in the night time or delivering the same shall be guilty of a misdemeanor,

&c." This act, in sections 1 and 35, defines what is meant by "contraband liquors" as follows: Sec. 1. "All such liquors, except when bought of a State officer authorized to sell the same, or in possession of one, and having been duly tested by the chemist of the South Carolina College and found to be chemically pure, are declared to be contraband, and against the morals, good health and safety of the State, and all alcoholic liquors in the State not having been tested by the chemist of the South Carolina College and found to be chemically pure, are hereby declared to be of a poisonous and detrimental character, and their use and consumption as a beverage are against the morals, good health and safety of the State, &c." Sec. 35. "All alcoholic liquors, other than domestic wine, which do not have on the packages in which they are contained the label and certificate going to show that they have been tested by the chemist and purchased from a State officer authorized to sell them, are hereby declared contraband, and on seizure will be forfeited to the State, as provided in section 31: Provided, that this section shall not apply to liquors held by the owners of registered stills in bonded warehouses. Persons having liquors which they wish to keep for their own use may throw the protection of the law around the same by furnishing an inventory of the quantity and kinds to the State commissioner, and applying for certificates to affix thereon." The Circuit Judge in his charge to the jury defined the term "contraband" in the language of the statute, and substantially charged the requests of the appellants, except that he added a proviso as to "contraband liquor," in accordance with the statute. The charge of the Circuit Judge should be officially reported along with the exceptions, in order to show the precise points in issue. It is not accurate to state as a fact that defendants purchased the liquors in question for personal use. They did so state in their testimony, but there were other circumstances in the case from which a different conclusion might have been reached if the jury had been called on to decide such an issue. The contention of the defend-

16—55

ants in the Circuit Court was that they had the right to import intoxicating liquors for any purpose, as shown by the sixth request to charge.

Appellants admit that they violated the terms of the dispensary act. The main contention here is that the legislation concerning the offense charged is void and inoperative, as applied to the conduct of appellants in this case, because the liquors which they confessedly were handling and hauling in the night time, were, at the time of the alleged offense, within the protection of the interstate commerce power of the United States, and not subject to the police power of the State. Mr. Justice Gary in his opinion takes this view. Two reasons are assigned : first, that at the time of the alleged hauling of the liquors, the same were under transportation, within the meaning and protection of the interstate commerce clause of the United States Constitution, to the exclusion of the police power of the State; and second, because the legislation requiring certificates as to the chemical purity of liquors imported, is a discrimination against such imported liquors in favor of dispensary liquors. I will notice this second ground first. The dispensary act of 1896 expressly provides, in section 2, that the State board of control shall purchase all liquors for lawful use in this State, and shall have the same tested and declared to be pure; and in section 3 it is provided that the State commissioner shall not furnish to county dispensers any intoxicating or fermented liquors except such as have been tested by the chemist of the South Carolina College, and declared to be pure; and further provides that the certificate of the said chemist shall be attached to the packages of liquors sold in the dispensaries. It thus appears that liquors kept for sale and sold under the dispensary law must have such certificate attached. This at once dispels the idea that there is any discrimination against imported liquor in favor of dispensary liquor, in reference to the matter of certificate as to purity. There is no discrimination whatever in this regard, whether the liquor be made in this State, or sold in the dispensaries,

or imported for personal use. The design of the dispensary law is to restrict the use of intoxicating liquors to such liquors as are chemically pure. To allow liquor imported for personal use to be kept and used without such test of purity, while requiring such tests as to liquors produced in the State, or sold in the dispensaries, would be a discrimination in favor of the liquor imported for personal use and against all other liquors in this State, and would tend to defeat the police regulation designed to prevent the use of impure and poisonous liquors. The legislation in question does not seek to have any extra territorial effect. It is local, operating on all intoxicating liquors within the State belonging to the class of liquors not tested and found to be pure. It does not burden commerce by operating materially on any interstate contract, involving interstate transportation. It does not discriminate against non-resident producers and sellers. It does not prohibit the right to receive an interstate shipment or consignment of liquors for personal use. It is on its face a mere police regulation, defining the circumstances under which intoxicating liquors within this State shall be deemed contraband, and forbidding the handling of the same in the night time. Intoxicating liquors are universally held to be peculiarly subject to police control. Surely it is within the police power of the State to declare when such liquors, if within the State in the hands of citizens of this State, shall be deemed contraband, and to interdict the hauling thereof about the country under cover of night, as a means to prevent or make more difficult illicit traffic.

In reference to the question whether the liquors at the time of the alleged offense were exclusively within the protection of interstate commerce and exempt from State regulations, it is not easy to define with exactness the domain of the commercial power from which the police power is excluded. While the States did surrender to the federal government the right to regulate commerce with foreign nations and between the States, the police powers of the States were never surrendered, and ought to be zealously guarded by the

Courts of the State. Cases falling clearly within either domain are easy of solution, but much difficulty is experienced in the proper solution of those matters that lie near the dividing line between these great powers. Such is the case before us. I understand the settled rule of the United States Supreme Court is this, that State regulations enacted in the exercise of the police power are not void unless they directly and substantially interfere with or burden interstate commerce. Numerous instances might be cited in which the Supreme Court of the United States has held police regulations valid, notwithstanding they remotely, or indirectly, or for a limited time, or to a limited extent, affected interstate commerce. I will cite two cases recently decided, *Hennington* v. *Georgia,* 163 U. S., 299, and *Lake Shore &c. R. R. Co.* v. *Ohio,* 19 Sup. Ct. Rep., 465. In the first mentioned case the Court held that a statute of Georgia making it a misdemeanor to run a freight train on the Sabbath day, was within the police power of the State, even as applied to a freight train engaged in interstate commerce. The Court said: "Local laws of the character mentioned have their source in the powers which the States reserved and never surrendered to Congress, of providing for the public health, the public morals and the public safety; and are not within the meaning of the Constitution; and considered in their own nature regulations of interstate commerce, simply because for a limited time or to a limited extent they cover the field occupied by those engaged in such commerce. The statute of Georgia is not directed against interstate commerce. It establishes a rule of civil conduct applicable alike to all freight trains, domestic as well as interstate. It applies to the transportation of interstate freight the same rule precisely that it applies to the transportation of domestic freight." In the second case mentioned, the Court held that an Ohio statute requiring all railroad companies, operating lines within the State, to cause three, each way, of its regular passenger trains, if so many are run daily, to stop at a city or town with over 3,000 inhabitants, to receive and

STATE *v.* HOLLEYMAN. 245

discharge passengers, is a valid exercise of the police power
of the State, and applies to an interstate railroad operating
through such State, Congress not having taken affirmative
action under its power to regulate interstate commerce in
reference to that matter. The Court adjudged that the
Ohio statute was not in itself a regulation of interstate com-
merce, but was designed to subserve public convenience, and
was within the police power of the State, notwithstanding
such regulation incidentally or remotely affected interstate
commerce.

It must be noted here that the legislation in question here
is not the legislation that was condemned in *Vance* v. *Van-*
*dercook,* 170 U. S., 438. The obnoxious regulation in that
case considered was an amendment to the act of 1897, 22
Stat., 535, which expressly regulated the importation of
liquors for personal use, which was held void as a substantial
interference with interstate commerce, because the resident
desiring to import liquors was required to *first* communicate
his purpose to a State chemist, and because the non-resident
was deprived of his right to ship by means of interstate com-
merce any liquor into South Carolina without previous
authority obtained from a State officer. This was a practi-
cal prohibition on the non-resident's right to ship, directly
affecting the interstate contract or transaction. This ques-
tion before us now is quite different, and is not at all con-
cluded by the decision in Vance *v.* Vandercook; in fact, as I
shall presently attempt to show, the case of Vance *v.* Van-
dercook leads logically to a different conclusion from that
reached in the opinion of Mr. Justice Gary.

I come now to the act of Congress known as the "Wilson
Act." This act in express terms places intoxicating liquors
within the police power of the State upon "arrival" in the
State. In the case of *Rhodes* v. *Iowa,* 170 U. S., 412, the
Supreme Court of the United States construed "arrival" to
mean "arrival at the point of destination and delivery to the
consignee." It clearly appears from the extract from this
case, in the opinion of Mr. Justice Gary as well as from the

whole case, that "arrival at destination and delivery to con-
signee" involves an interstate *shipment* pursuant to an inter-
state *contract.*    In such case the interstate commerce trans-
action is consummated by delivery to consignee.   In the case
before us, the delivery was made at Hightower's distillery,
in North Carolina.   The destination and delivery, so far as
the non-resident seller was concerned, was the actual custody
of the buyers in North Carolina.   There could not possibly
be any further delivery by the buyers to themselves, either
at the State line or at their homes in Darlington.   So it is
impossible to entertain in this case the idea of delivery in
South Carolina at the defendants' homes.   I concede, of
course, that transportation is included in interstate com-
merce, but it must be, as I conceive, under the Wilson act
and the construction placed upon it, a commercial transpor-
tation pursuant to an interstate contract involving an inter-
state shipment and delivery at the end of the transportation.
There is, it is true, a constructive delivery to the consignee
when the goods are delivered for shipment to a common car-
rier, but in such case interstate commerce protects the goods
before actual delivery, because the carrier is an agent of
interstate commerce, and holds the goods under interstate
contract for shipment and delivery.   But when the carrier
delivers intoxicating liquors at the place of consignment, it
surely cannot be successfully maintained that the liquors are
protected by interstate commerce until consumed in the use.
Interstate commerce yields its grasp when the interstate
transaction is consummated by actual delivery of the intoxi-
cating liquors.   The liquors become subject to the police
power of the State when they enter the territory of the State,
in the absence of any contract by or with a carrier involving
shipment and delivery at a destination within the State.   The
police power extends to persons and things within the territory
of the State, and is operative thereon unless the commercial
power shields to the exclusion of the police power, which
cannot be, when the interstate commerce transaction is com-
pleted by actual delivery of the liquors.   To hold that intox-

icating liquors imported for personal use are protected by the commercial power until consumed in the use, is to hold that such liquors never became subject to the police power of the State, which carries the argument on the question when intoxicating liquors "arrive" in the State to the unreasonable length of saying that liquors imported for personal use *never* arrive in the State. Note the language of the "Wilson Act:" liquors "transported into any State or remaining therein for *use, consumption, sale* or *storage.*" In Vance *v.* Vandercook, it was held that police regulations attached as to imported liquors after delivery and *before sale* under this act. How can the conclusion be escaped that police regulations attach as to imported liquors before *use,* before *consumption,* before *storage?* The act makes no distinction.

The judgment of the Circuit Court should be affirmed.